| 56 | 485 |
| 59 | 33 |

MINNEAPOLIS MILL CO. vs. BOARD OF WATER COM'RS OF CITY OF ST. PAUL.

| 56 | 485 |
| 82 | 51 |
| 82 | 55 |

ST. ANTHONY FALLS WATER-POWER CO. vs. SAME.

Argued Dec. 20, 1893. Affirmed Feb. 9, 1894.

Nos. 8394, 8395.

**Riparian rights subordinate to public uses.**

The rights of riparian owners on navigable or public streams of water are subordinate to public uses of such water, and the rights of these appellants under their charters are equally subordinate to such public uses.

**—Same—Without making compensation.**

The public have the right to apply the waters of a navigable stream to public uses without making compensation to riparian owners.

**Taking water for use of cities is taking for public use.**

The navigation of the stream is not the only public use to which these public waters may be applied. The right to draw from them a supply of water for the ordinary use of cities in their vicinity is such a public use, and this right is not affected by the fact that consumers are charged for water used, as a means of paying the cost of maintaining the plant.

**State not controlled by rules which obtain between riparian owners.**

In thus taking water from navigable streams or lakes for ordinary public uses, the state is not controlled by the rules which obtain between riparian owners as to the diversion from, and return of water to, its natural channels.

**St. Paul charter construed.**

Certain provisions in respondent's charter, relating to compensation for damages arising out of the taking and diversion of water, construed. *Held*, that those provisions were not intended to provide for compensation to riparian owners on navigable or public streams.

Appeal by plaintiff, the Minneapolis Mill Company, a corporation, from an order of the District Court of Hennepin County, *Thomas Canty*, J., made July 22, 1893, denying its motion for a new trial.

Plaintiff owned the right bank of the Mississippi River at the Falls of St. Anthony and built a wing dam into the river a few rods above the Falls and utilized the water power created thereby.

Another corporation, the St. Anthony Falls Water Power Company, owned the left bank of the river and also built a wing dam

into the river and the two dams were extended until they met at the thread of the stream. Each company leased the power so created to mills situated upon the banks of the stream below the Falls. A large scope of country, one hundred and thirty square miles, in Ramsey, Washington, Anoka and Chisago counties, embracing White Bear, Bald Eagle and other lakes, is drained by Rice Creek to and through Lake Baldwin and thence into the Mississippi River eight miles above St. Anthony Falls, and its waters add sensibly to the volume of water there.

The Board of Water Commissioners of the City of St. Paul in 1889 established pumping works at Lake Baldwin and have since taken therefrom for the use of the inhabitants of that city situated ten miles below the falls, about fifteen hundred million gallons of water annually. The plaintiff brought this action to restrain the city from so taking the water and for damages. On the trial May 22, 1893, after plaintiff's evidence had been submitted, the court on motion of defendant dismissed the action on the merits. Plaintiff moved for a new trial. Being denied, it appeals.

Another similar action brought at the same time by the St. Anthony Falls Water Power Company against the same defendant praying for the same relief, was tried at the same time and was disposed of in the same way. It also moved for a new trial, was denied and appeals. The two actions involve the same questions.

*Benton, Roberts & Brown*, for appellants in each case.

The riparian owner on the bank of a navigable river holds the fee to low water mark. He does not own the bed of the river below low water mark; neither does he, nor any one, own the waters of the river, either below or above low water mark; but he has, as appurtenant to his riparian property, and as a part and parcel of it, a right and property in and to, not the waters themselves, but to the use of all the waters which uninterrupted and undiminished would naturally flow in the channel of the river past his riparian lands. He has a right to take any measures for the purpose of making those waters available for use and to use them either himself or by his tenants so long as such use does not interfere with the public right of navigation or the right of lower riparian proprietors. The state has no *jus privatum* or propri-

etary interest, either in the bed or in the waters of the river. The only interest which the state has, is by virtue of its sovereignty an interest in trust to control the use of the waters in their natural channel, for the purpose of keeping the stream open and free from obstruction for a public highway.    The state cannot alienate either the bed of the river itself or its waters any more than it could abdicate its sovereignty in other matters.    Consequently the charter of the Board of Water Commissioners of St. Paul, by which that board were given the right to take waters from the lakes of Minnesota to use for domestic and other purposes upon the express condition of paying damages to riparian owners for injuries thereby occasioned to their property, was not intended and cannot serve as a grant under which defendant can divert water which would naturally flow past plaintiffs' land, and sell it not only for domestic purposes but for consumption in steam boilers and other private uses, without paying plaintiffs for the injury caused them by such diversion.    *Wilts & B. Canal Nav. Co.* v. *Swindon Waterworks Co.,* L. R. 9 Ch. App. Cas. 451; *Acquackanock Water Co.* v. *Watson,* 29 N. J. Eq. 366; *Emporia* v. *Soden,* 25 Kans. 588; *Gardner* v. *Village of Newburgh,* 2 Johns. Ch. 161; *Arnold* v. *Foot,* 12 Wend. 330; *City of Reading* v. *Althouse,* 93 Pa. St. 400; *Hill* v. *Ionia,* 38 Mich. 493; *Stein* v. *Burden,* 24 Ala. 130; *Howe* v. *Doylestown,* 4 Brews. 333; *Watuppa Reservoir Co.* v. *Fall River,* 134 Mass. 267; *Proprietors of Mills* v. *Randolph,* 157 Mass. 345; *Manville Company* v. *City of Worcester,* 138 Mass. 89; *Union Depot St. Ry. & T. Co.* v. *Brunswick,* 31 Minn. 297; *Bradshaw* v. *Duluth Imp. Mill Co.,* 52 Minn. 59; *Smith* v. *City of Rochester,* 92 N. Y. 463; *Sweet* v. *City of Syracuse,* 129 N. Y. 316; *Rumsey* v. *New York & N. E. R. Co.,* 133 N. Y. 79; *Green Bay & M. C. Co.* v. *Kaukauna W. P. Co.,* 70 Wis. 635; *Kaukauna W. P. Co.* v. *Green Bay & M. C. Co.,* 75 Wis. 385; *Yates* v. *Milwaukee,* 10 Wall. 497; *Pumpelly* v. *Green Bay Co.,* 13 Wall. 166; *Illinois Cent. R. Co.* v. *Illinois,* 146 U. S. 387; *Monongahela Nav. Co.* v. *United States,* 148 U. S. 312.

*Leon T. Chamberlain* and *Walter L. Chapin,* for respondent.

The state has power to divert the waters of a navigable stream for public purposes, without regard to incidental injuries to pri-

vate persons. Plaintiffs maintain the mill dams in question only by license from the state, and their claim of injury depends upon alleged property rights arising solely and resting absolutely upon the maintenance of their dams. The right to dam the Mississippi river originating and existing only by the bounty of the state, by its license, the state may at any time revoke that license or curtail its benefits. This prerogative it has exercised in granting the defendant the right to take water from any lake or stream which might or might not contribute its waters to the Mississippi. The rights alleged to be infringed depend upon the maintenance of the mill dams. The state merely permitted the plaintiffs to use the bed of the Mississippi river with its incidental privileges until it saw fit to limit those privileges by using them for itself. Defendant is a municipal corporation, a branch of the state government. The use of the water by defendant is a public use. *People* v. *Canal Appraisers,* 33 N. Y. 469; *Wood* v. *Fowler,* 26 Kans. 682; *Canal Appraisers* v. *People,* 17 Wend. 571; *Rundle* v. *Delaware & R. C. Co.,* 14 How. 80; *Susquehanna Canal Co.* v. *Wright,* 9 Watts & S. 9; *Monongahela Nav. Co.* v. *Coons,* 6 Watts & S. 101; *Fay* v. *Salem & D. A. Co.,* 111 Mass. 27; *People* v. *Tibbetts,* 19 N. Y. 523; *Tomlin* v. *Dubuque, B. & M. R. Co.,* 32 Ia. 106; *Union Depot St. Ry. & T. Co.* v. *Brunswick,* 31 Minn. 297.

COLLINS, J. These cases were tried together in the court below, and, when plaintiffs rested, both actions were dismissed, upon defendant's motion. From orders refusing new trial, appeals were taken. Plaintiffs are corporations created in 1856 by acts of the Territorial Legislature, and authorized to build and maintain dams in the Mississippi river at the falls of St. Anthony, about ten miles above St. Paul, for the development of a water power, and for the use and sale of such power. One of these corporations, owning the shore on the east side of the river, erected a dam to the proper point in the river channel, and the other, owning the west shore, built its dam so as to connect the two, thus forming a power which has ever since been maintained and used.

In 1883 the Legislature authorized the city of St. Paul to purchase, and there was purchased, the property and franchises of a private corporation theretofore engaged in supplying said city with

water.    A board of water commissioners was created by the same act, and that board, a branch. of the city government, is the present defendant.    By the provisions of an amendatory act (Sp. Laws 1885, ch. 110, § 5 *et seq.*) the board was authorized and empowered to add to its sources of supply, and to draw water from any lake or creek, and, in general, to do any act necessary in order to furnish an adequate supply of water for the use of the city.    The manner in which it should acquire the right to extend its works so as to connect with any body of water deemed necessary for an increased supply, was specified, and in section 7 it was provided that "after making compensation as hereinafter provided to the owners of or the persons interested in the lands so to be taken and for damages by reason of diverting the water of any stream, creek, or body of water, said city shall have an easement therein."    In section 8, provision was made for the appointment of commissioners to assess the damages sustained by the owners of lands to be taken, or by other persons, by reason of such taking, or arising by the construction, use, and operation of the works.    Under this act the defendant duly established a pumping station at Lake Baldwin, a body of water with an area less than a mile square, and by means of its pumps forced water through conduits to the city for public use. The outlet of this lake is Rice creek, and this creek empties into the Mississippi river a few miles above the dams built and maintained by appellants.    Claiming that the result of this diversion of water was to greatly diminish the volume which came to the dam, and to materially affect and reduce the water power, plaintiffs brought these actions to restrain and enjoin perpetually the operation of defendant's works at the lake, and the diversion of water therefrom.

Counsel for both parties made lengthy oral arguments, and have filed very full briefs.    Many questions have been discussed which we do not regard as connected with the case, and hence we need not refer to them.    There are a few well-settled principles which we regard as covering and controlling the facts before us, and a statement of these, with a construction of certain parts of the act under which defendant's board was authorized to obtain further and other sources of water supply, will dispose of these appeals.

1. The plaintiffs are riparian owners on a navigable or public

stream, and their rights as such owners are subordinate to public uses of the water in the stream. And their rights under their charters are, equally with their rights as riparian owners, subordinate to these public uses.

2. There can be no doubt but that the public, through their representatives, have the right to apply these waters to such public uses without providing for or making compensation to riparian owners.

3. The navigation of the stream is not the only public use to which these public waters may be thus applied. The right to draw from them a supply of water for the ordinary use of cities in their vicinity is such a public use, and has always been so recognized. At the present time it is one of the most important public rights, and is daily growing in importance as population increases. The fact that the cities, through boards of commissioners or officers whose functions are to manage this branch of the municipal government, charge consumers for water used by them, as a means for paying the cost and expenses of maintaining and operating the plant, or that such consumers use the water for their domestic and such other purposes as water is ordinarily furnished by city waterworks, does not affect the real character of the use, or deprive it of its public nature.

4. In thus taking water from navigable streams or lakes for such ordinary public uses, the power of the state is not limited or controlled by the rules which obtain between riparian owners as to the diversion from, and its return to, its natural channels. Once conceding that the taking is for a public use, and the above proposition naturally follows.

Turning now to the provisions of defendant's charter, Laws 1885, ch. 110, it will be seen that the board was not limited to public waters as the sources of its contemplated additional supplies. It was authorized to appropriate private waters for the purpose, and hence the provisions of the act which provide for the ascertaining of, and making compensation for, damages caused by a diversion of water, must be construed as applying solely to cases where the board took private property by using or diverting merely private waters. Inasmuch as the state itself could use the waters in question, as against the plaintiffs, without compensation, it would

require very clear language to that effect to justify the conclusion that the Legislature intended to impose on respondent board the burden of paying plaintiffs for what, as against the public, they did not own. If the right granted by the Legislature had been exclusively to divert waters from a certain specified body of public water, such as one of the "great" ponds of Massachusetts, referred to in the cases cited from the reports of that state, so that the provisions in Laws 1885, ch. 110, relating to compensation could not apply to anything else,—to the owners of private waters, for instance,—the construction contended for by appellants, that it was intended they should be compensated in case damages resulted, might arise by implication.

Orders affirmed.

The CHIEF JUSTICE did not sit.

(Opinion published 58 N. W. Rep. 33.)