EMILY P. McFADDEN

*vs.*

HAYNES AND DEWITT ICE COMPANY.

Lincoln.    Opinion March 26, 1894.

*Waters. Ice. Flats. Colonial Ordinance, 1647.*

The right to cut ice upon public rivers and ponds results from the fact that, below the line of low water, the State owns the beds of navigable rivers and great ponds, and holds them in trust for the public. Everyone may cut ice below the line of low water as a public right.

No such right exists above the line of low water. It does not exist upon non-navigable waters, private ponds, or flats.

Ice companies operating upon navigable rivers do not have the right to deposit the snow, scraped from their ice, upon the flats of an adjoining owner without the latter's consent.

ON EXCEPTIONS.

Assumpsit for rent. The following is the material part of the report of the referee, Hon. Enoch Foster, to whom the action was referred, and to which the defendants excepted :

"The plaintiff was the owner of a farm or parcel of land lying on the easterly side of the Kennebec river, in the town of Dresden, about seventy-six rods in width on the river; that there were flats belonging to this land, and which the plaintiff owned, subject to all rights belonging to the public, between high and low water mark, of the following extent, viz : seventy-six rods in length up and down the river, seventeen rods wide at the northerly end, twenty-eight rods wide at the southerly end, and about twenty-three or twenty-four rods wide in the middle. The defendant company had leased of the plaintiff for the term of five years, commencing August 17, 1880, and ending August 17, 1885, a strip of land one rod in width along the shore of the river, above high water mark, together with all rights and privileges of ice fronting thereon, the plaintiff reserving the right to cut the grass on the flats during the time of said lease.

"The defendant company had used the flats for the purpose of dumping the snow which was scraped from the ice which they cut from the river opposite the flats, but beyond low water mark. For no other purposes were the flats used by the defendant company during the continuance of the lease. The defendant company used the flats the two years after the expiration of the lease, being the two years for which suit is brought in plaintiff's writ, just as they had previously done, the whole width of the flats if they wanted to, and since that time they had gone round them. There was evidence in the case of attempted negotiations for a renewal of the lease, or for some agreement upon a reasonable consideration to be paid plaintiff, but no adjustment was ever arrived at, concerning the flats.

"The defendants at the hearing claimed that they were only exercising such rights as belonged to them of right in the use of the flats, between high and low water, during the time sued for in the plaintiff's writ; that they were in the exercise of a public right in cutting ice from the river below low water mark, and as incident to that right they had the right to clean or scrape the ice of snow and deposit the snow on the flats adjacent, and that the plaintiff's ownership of the flats was subject to that right. . . . Upon the facts above found and stated in this report, I decide and determine, as matter of law, that the defendants are liable in this action, the amount not being in controversy, but the right of recovery only for the use of the flats as above stated. And, I, therefore determine and award that the plaintiff recover of the defendant company the sum of one hundred dollars." . . .

*Weston Thompson, F. J. Buker*, with him, for plaintiff.

*Baker, Baker and Cornish*, and *Geo. B. Sawyer*, for defendants.

A title to flats is a qualified title and is subject to the right of the public to use the water covering the flats for any purpose naturally incident to any of the great reserve rights, which the public hold in common, in the general waters of the stream. *Weston* v. *Sampson*, 8 Cush. 354.

But although the riparian proprietor has an interest in the soil, it is not an absolute and unqualified ownership; but so long as the flats so situated are left open, unoccupied by any wharf, dock, or other inclosure, so long as the tide ebbs and flows over them, they so far retain their original character and remain public. This double rule, to which the territory lying between high and low water mark may be subject, is not a novelty in the law, but an old and recognized principle.

The rule, established by usage and judicial decision, has been, that although the ordinance transfers the fee to the riparian owner, yet until it is so used, built upon, or occupied, by the owner, as to exclude boats and vessels, the right of the

public to use it is not taken away; but that whilst open to the natural ebb and flow of the tide, the public may use it, may sail over it, anchor upon it, fish upon it, and by so doing commit no trespass, and do not disseize the owner. *Austin* v. *Carter*, 1 Mass. 231. These rights originally were : 1. Right of navigating the waters over the flats. *Weston* v. *Sampson*, 8 Cush. 355; *Gerrish* v. *Union Wharf*, 26 Maine, 392; *Commonwealth* v. *Alger*, 7 Cush. 74; *Austin* v. *Carter*, 1 Mass. 231. 2. The right of fishing in the waters over the flats. *Weston* v. *Sampson*, *supra*; *Duncan* v. *Sylvester*, 24 Maine, 486; *Moulton* v. *Libby*, 37 Maine, 472; *Bagott* v. *Orr*, 2 B. & P. 472.

Courts have uniformly recognized these public rights to the waters over the flats, though the same were not expressly enumerated in the ordinance as reserved public rights. These are : 1. Bathing. *Fay* v. *Salem Aqua.* 111 Mass. 27; *Reservoir Co.* v. *Fall River*, 147 Mass. 558, 565. 2. Skating. Same cases. 3. The right to use the surface of the water over the flats when frozen the same as when unfrozen for public travel, including winter ice roads, and the driving and stopping of horses and teams. *French* v. *Camp*, 18 Maine, 433; *State* v. *Wilson*, 44 Maine, 25; *Roxbury* v. *Stoddard*, 7 Allen, 167. 4. The right to cut and take ice in common from the main river, which is essentially a modern right and in the amount of capital and men employed, and its importance as an industry, is perhaps the most available public right now existing in the navigable rivers of Maine. Gould on Waters, § 191; *Woodman* v. *Pitman*, 79 Maine, 456.

The court has recognized the right of the boat or vessel to anchor even to the soil of the flats, to let the boat remain resting on the flats themselves while the tide is out, and to use the soil of the flats both for mooring vessels and for lading and unlading them when the flats are bare. Gould on Waters, § 20. The right to moor vessels and discharge and take in cargoes and the use of the soil for these purposes is recognized in *State* v. *Wilson*, 42 Maine, 24. In *Gerrish* v. *Union Wharf*, 26 Maine, 392, it was held, that the right to use the waters covering flats

for navigation purposes was not abridged by the ordinance. That vessels had a right to pass over the flats when covered and to remain on them for commercial purposes when bare from ebb to flow of the tide.

So the right of the public to move and stand upon the flats for the purpose of fishing is recognized as an incidental right. *Packard* v. *Ryder*, 144 Mass. 440. In like manner, we claim that as essential to the public right of taking ice from the main river is involved the right of the public to pass and repass over the ice covering the flats with the same freedom as on the main river, including, wherever it might be necessary, the right even to haul the ice over the flats even when bare.

The ordinance of 1647 made no alteration in the use of places there described "as flats, while they were covered with water," &c. *Com.* v. *Alger*, 7 Cush. 53; *Dyer* v. *Curtis*, 72 Maine, 184, and cases.

The rights claimed by the defendants, in behalf of the public, do not involve any use of the soil itself of the flats, but only the surface of the water in its frozen state. Any use of the ice which would be authorized when the tide was up would also be authorized when the tide was out so long as the ice remains covering the flats.

As the fisherman has the right to plant his boat itself, which is one mode of artificial obstruction, even upon the soil of the flats for the purpose of taking his fish, and even of digging up the soil for the same purpose, could there be any doubt of his right when the water was frozen to plant an ice boat or a fisherman's hut upon the frozen surface in order that the full beneficial enjoyment of the public right of fishing? The temporary obstruction of meltable snow answers exactly to this analogy, and we submit it is a clear right in the public as incident and reasonably necessary to the full beneficial enjoyment of the admitted right of the public to take ice.

It will be further noted that this is a right of vastly greater public importance commercially, than the fisherman's right to build his hut, because if the ice cutter has not this essential right to scrape snow onto the unused flats, when covered, with

frozen water, then he must use the cutable ice of the main river for this purpose, and in that way abridge by many thousands of acres the available ice supply of all our navigable rivers. Now a single acre of cutable ice twelve inches in thickness will yield a thousand tons of ice, and the loss of this available tonnage all up and down the river would be of immense commercial value, and would be just so much property taken from the public and given to the private individuals upon the shores. We submit that policy in law is to increase rather than restrict public rights in all navigable waters whether frozen or unfrozen.

SITTING: PETERS, C. J., WALTON, FOSTER, HASKELL, WHITEHOUSE, JJ.

WALTON, J. This is an action to recover rent for the use of flats on the easterly shore of the Kennebec river, in the town of Dresden. The action has been referred, a hearing had, a report made, and the report accepted; and the case is before the law court on exceptions to the acceptance of the report. The award was in favor of the plaintiff and the Ice Company excepts.

The only question argued by counsel, and the only one we find it necessary to consider, is whether an ice company, operating upon one of our public rivers, has a right to deposit the snow scraped from its ice upon the flats of an adjoining owner, without the latter's consent.

We think the question must be answered in the negative. No case has been found which sustains such a right, and we do not think it can be maintained upon principle.

The argument urged in its support rests upon a supposed analogy between the rights of fishermen and the rights of ice-cutters. It is claimed that, if a fisherman may enter upon another's flats, and anchor his boat there, and dig up the soil in summer, or, in winter, place an ice boat or a hut upon the frozen surface, an ice-cutter, by analogy, should be allowed temporarily to incumber another's flats with the snow scraped from his ice.

We can not admit the soundness of this argument. Property rights can not be established by analogy alone. The fisherman

has a right to go upon another's flats to take his fish, because
the ordinance of 1647, which gave to the adjoining owner the
flats in front of his land, expressly reserved the right of fishery.
The fisherman has a right to go upon another's flats because it
is one of his reserved rights. But no such right was reserved
to the ice-cutter. His right to cut ice upon our public rivers and
ponds results from the fact that, below the line of low water,
the state owns the beds of navigable rivers and great ponds,
and holds them in trust for the public. Below the line of low
water every one may cut ice. It is a public right. Above the
line of low water, no such right exists. Nor does it exist upon
non-navigable rivers or private ponds. Nor does it exist upon
flats. And we fail to perceive how an ice company, operating
upon one of our navigable rivers, can possess the right to deposit
the snow scraped from its ice upon the flats of an adjoining
owner, without the latter's consent. It is not among the
reserved rights mentioned in the ordinance of 1647, nor, so far
as we can discover, has the right thus to incumber another's
land been recognized or affirmed by judicial decision, either in
this country or in England. It is the opinion of the court that
such a right does not exist.

*Exceptions overruled.*