JOHN B. SANBORN v. PEOPLE'S ICE COMPANY.[1]

December 19, 1900.

Nos. 12,239—(93).

### Use of Public Waters.

Under the general law, all persons have the common right to enjoy the use of public waters for the ordinary purposes of life, such as boating, fishing, recreation, and domestic or individual uses, including the right to take ice therefrom.

### Same.

Such ordinary uses constitute a right held in common by the public and riparian owners.

### Cutting of Ice.

The cutting and removing of ice in large quantities annually for shipment and sale for commercial purposes from public waters, whereby their natural level is materially reduced, is not such a common right.

### Riparian Rights.

Riparian owners, by virtue of their ownership and possession, have

[1] Reported in 84 N. W. 641.

certain special interests in such waters not enjoyed by the public in general, the extent of which depends upon the nature of the shore land and the character and extent of the possession.

### Remedy against Common Use.

If such public waters are disturbed beyond their natural condition by the general public in the exercise of the right of common usage, neither a riparian owner nor other common user has a legal remedy to prevent the same.

### Remedy of Riparian Owner.

A riparian owner may, by virtue of his special interest as such, enjoin an interference with such waters which disturbs their natural condition, provided such owner is peculiarly and specially affected and damaged thereby.

### Sp. Laws 1881, c. 410.

Sp. Laws 1881, c. 410, is a general law in its application, and need not be specially pleaded.

### Same—White Bear Lake.

By the terms of this law, the waters of White Bear lake are declared to be public waters, and it is made unlawful artifically to remove any water from the same for any purpose whereby the level of such water is materially reduced.

### Cutting of Ice.

Cutting and removing ice for the purpose of shipment and sale in distant markets for commercial purposes is such an artificial taking and removing of water from such lake.

### Remedy of Riparian Owner—Injunction.

A riparian owner upon the lake may, under the provisions of this act, enjoin the taking of ice therefrom if such taking results in lowering the lake below its natural condition, provided such owner is damaged thereby, and such taking is artificial.

### No Remedy against Common Use.

But neither a riparian owner nor a common user of the waters of such lake is entitled to invoke the benefit of such law in cases where the taking of such water is in the exercise of a common right.

### Complaint States a Cause of Action.

It appearing from the complaint in this action that the lake in question was during twelve years lowered two feet below its natural outlet, and that the acts of defendant in cutting and removing ice therefrom were

sufficient to reduce the volume of water one-quarter of an inch annually, and to cause a further decrease by evaporation, *held*, such taking was of substantial character, and entitles the shore owner to the right of injunction to restrain the continuance thereof, and that the complaint states a cause of action.

### Defect of Parties Plaintiff.

There is no defect of parties plaintiff in this action, for the reason that, as appears from the complaint, the other users of the waters were exercising the right of common usage, and that they were not specially damaged by the acts complained of.

### Defect of Parties Defendant.

There is no defect of parties defendant in this action for the same reason as above stated.

Appeal by plaintiff from an order of the district court for Ramsey county, Brill, J., sustaining a demurrer to the complaint. Reversed.

*John B. & E. P. Sanborn* and *Ross Clarke*, for appellant.

The maxim "de minimis non curat lex" is never applied to the positive and wrongful invasion of property. Seneca v. Auburn, 5 Hill, 170. In an action on the case the degree of damage is wholly immaterial, and it is always enough that there is a plain violation of right and a possibility of damages. The cutting and removing of ice to the extent of seventy-five thousand tons per annum was for commercial purposes, and for private gain and profit. If such an appropriation of ice is an appropriation to public use, then if it lowers the waters it is prohibited by Sp. Laws 1881, c. 410, and is unlawful, and any citizen injured in his property rights can enjoin the act. For taking ice for commercial purposes, if injury results, an action will lie in favor of one entitled to complain. Eidemiller v. Guthrie, 42 Neb. 238; Brown v. Cunningham, 82 Iowa, 512; Elliot v. Fitchburg, 10 Cush. 191; Bigelow v. Shaw, 65 Mich. 341; Mill River v. Smith, 34 Conn. 462; Flaten v. City of Moorhead, 51 Minn. 518. The complaint states facts sufficient to constitute a cause of action. Potter v. Howe, 141 Mass. 357; French v. Connecticut, 145 Mass. 261; Page v. Mille Lacs L. Co., 53 Minn. 492; Aldrich v. Wetmore, 52 Minn.

164; Cedar Lake v. Cedar Lake, 79 Wis. 297; Kimberly v. Hewitt, 79 Wis. 334; Stadler v. Grieben, 61 Wis. 500; Brickner v. Henry, 73 Wis. 229; Patten v. Kaukauna, 70 Wis. 659; Mill River v. Smith, supra; Yates v. Milwaukee, 10 Wall. 497; Haskell v. City, 108 Mass. 208; Brayton v. City, 113 Mass. 218; Higgins v. Flemington, 36 N. J. Eq. 538; Smith v. Youmans, 96 Wis. 103.

*Durment & Moore*, for respondent.

The waters of our lakes are receding constantly, even in those not being used as ice fields. This court has judicially recognized that fact in Lamprey v. State, 52 Minn. 181, 191. The complaint must show damage to plaintiff resulting from the acts of defendant, in order to state a cause of action. The complaint alleges that the water of the lake has fallen two feet, and sets forth certain alleged damages resulting. But a mathematical computation shows that the amount of water removed by defendant in twelve years, if all had been removed at one time and not replaced by any additions of water from other sources, would have reduced the level of the lake less than three and one-third inches. There is no allegation that any appreciable part of the alleged damage would have resulted from lowering the lake three and one-third inches.

The waters of the lake are public waters, and belong to the state in its sovereign capacity. Laws 1897, c. 257. Plaintiff has no property right in the water, nor any right to have it wash his land. The state may lower the water of the lake, drain it, or raise it to high water mark, without making compensation to the riparian owner. Minneapolis Mill Co. v. Board of Water Commrs., 56 Minn. 485, 488; In re Minnetonka Lake Imp. Co., 56 Minn. 513; Laws 1897, c. 88; Gniadck v. N. W. Imp. & Boom Co., 73 Minn. 87; Red River R. Mills v. Wright, 30 Minn. 249, 253. The title of the state to the lake (its bed and water) is of the same sort as that which it has to game and fish. The state owns it in its sovereign capacity, in trust for the common use of all people. Consequently, the public have the same rights in the waters of the lake (so far as unrestrained by statute) as they would have in game if not restricted by statutory provisions, and therefore defendant has

a right, so long as the state does not interfere, to take ice from the lake. Laws 1897, c. 257; Lamprey v. State, supra; State v. Rodman, 58 Minn. 393, 400. Courts very generally treat water, oil, and natural gas as being, in a great measure, of the same nature as wild game, and the public and the state as having substantially the same rights in them. In the cases involving the right to take natural gas and oil the courts have held that one (committing no trespass, and being restrained by no statutory provision) lawfully might draw from the common source of supply—might lawfully leave his neighbor's land "high and dry," though it formerly bordered (on its underside) on a lake of oil and gas. Peoples v. Tyner, 131 Ind. 277; Townsend v. State, 147 Ind. 624, 628; Westmoreland v. DeWitt, 130 Pa. St. 235, 247. The taking of ice is a public use, and every one is entitled to take ice in public waters as of common right so long as no trespass is committed in the taking, unless forbidden by statute. G. S. 1894, § 6640; Lamprey v. State, supra; Gould, Waters (2d Ed.) § 191; 9 Am. & Eng. Enc. 859; Inhabitants v. Stoddard, 7 Allen, 158, 170; Hittinger v. Eames, 121 Mass. 539, 546; Gage v. Steinkrauss, 131 Mass. 222; Peoples v. Davenport, 149 Mass. 322; Hickey v. Hazard, 3 Mo. App. 480; Wood v. Fowler, 26 Kan. 682, 689; Woodman v. Pitman, 79 Me. 456, 458.

Defendant being entitled of common right to take ice from the lake, the taking is lawful. If the taking damages plaintiff, it is damnum absque injuria. A landowner's riparian rights are subject to the rights of the public to use the waters for lawful purposes, and one making such use of the waters, in the absence of negligence, is not liable for damages resulting to the riparian estate from such use. Doucette v. Little Falls Imp. & Nav. Co., 71 Minn. 206; Coyne v. Mississippi & R. R. Boom Co., 72 Minn. 533.

The state alone can prosecute such an action as this. The remedy for an unreasonable use is by indictment. Inhabitants v. Stoddard, supra. No injury peculiar to plaintiff is shown, but an injury to him in common with other riparian owners. Every citizen has a like right of access as to the waters, from his own land or the public highway. Swanson v. Mississippi & R. R. Boom Co., 42 Minn. 532; Shaubut v. St. Paul & S. C. R. Co., 21 Minn. 502;

Barnum v. Minnesota Transfer Ry. Co., 33 Minn. 365; Fay v. Salem, 111 Mass. 27.

The action cannot be sustained upon the ground that the defendant is making an unreasonable use of the water, because: (1) The complaint does not allege that defendant has taken, or is taking, ice to an unreasonable extent. (2) The complaint shows that plaintiff and others are taking the water for domestic use. All have a common right to take water to a reasonable amount. All taking, or claiming the right to take, should be parties to the action so that the court could fix the amount each would be reasonably entitled to take.

The special act will not sustain the action, because: (1) It is not pleaded. The complaint does not base plaintiff's right on the statute, but on his riparian ownership and damage thereto. (2) The statute does not give a private right of action. The remedy for violation of the act lies only at suit of the state. (3) The statute does not apply to such use as defendant has made of it. But if it did, the statute would be invalid because of repugnancy, for the first section would confer on all the right to use the lake, while the second section would prohibit the exercise of the right conferred. (4) The complaint shows that plaintiff is taking waters for domestic household purposes. He will not be permitted to enforce the statute against defendant, in order that he may the more freely violate it himself. There is no difference between taking the ice for sale, and taking water for use of a boarding house standing on the shore, or to water cows from which milk is sold. The privilege of taking ice for sale is a common right.

LEWIS, J.

The complaint in this action alleges, in substance, that the plaintiff now and for twelve years has been the owner of, and in possession of, certain real estate bordering on White Bear lake, in the village of White Bear, Ramsey county, Minnesota; that the shore line of said premises along the lake is one hundred seventy-five feet; that plaintiff has made certain improvements thereon, consisting of a dwelling house, a stable, outhouses, etc., of the value of $10,000, and that the value thereof consists mainly in the con-

nection of the premises with the waters of the lake. It is further alleged that White Bear lake is naturally a large body of pure, clear, spring water, covering an area of twenty-four hundred acres of land, contiguous to the cities of St. Paul, Minneapolis, and Stillwater, has a reputation as a health resort, and is largely patronized in the summer season, for purposes of recreation, pleasure, and health, to accommodate which demand many cottages have been built on the lake shore; that the waters of the lake are used by such occupants, including plaintiff, for the purposes of boating, fishing, bathing, general recreation, and for domestic and household purposes.

It is further charged that defendant corporation has for more than twelve years annually cut and removed therefrom more than seventy-five thousand tons of ice, and shipped the same to St. Paul and distant markets, and disposed of the same for commercial purposes, is still engaged in the act of removing large quantities of ice for such commercial purposes, and that, by the opening of large areas of water to the action of the air, great quantities of water evaporated annually. It is further stated that the action of defendant in so removing the ice for the period of twelve years has had the effect of reducing the waters more than two feet, resulting in exposing shoals and bars, causing weeds to grow on the exposed shores, and rendering the beach and shore unsightly, and unfit for pleasure and health. It is alleged that, since defendant commenced to take out the ice as stated, there has been no overflow from the same through the natural outlet, and that the water level has been reduced below the natural outlet by the said acts of defendant.

As special damages thereby caused to plaintiff, it is alleged that plaintiff had constructed a bath house and pier for the requirements of bathing and boating, and that when so constructed the water at such points was two feet in depth, and as a result of defendant's acts, in so lowering the lake, there has been exposed in front of plaintiff's premises an unsightly bar of sand, in width one hundred fifty feet, and that in order to reach the water it is necessary to extend the pier, and that such improvements are being rendered useless, to defendant's damage of $2,500. The action is

82 M.—4

brought to restrain defendant from further cutting and removing ice.

To this complaint defendant demurred upon four separate grounds: (1) That the complaint does not state facts sufficient to constitute a cause of action; (2) defect of parties defendant; (3) defect of parties plaintiff; (4) that plaintiff has no legal capacity to sue. The court below sustained the demurrer, and plaintiff appealed.

In respect to all bodies of public water, in common with riparian owners, the public have the ordinary rights of usage. These include the right of boating, fishing, and the use of the water or ice for the ordinary purposes. In these respects, a riparian owner has no exclusive or peculiar privileges. There are certain interests and rights vested in the shore owner which grow out of his special connection with such waters as an owner. These rights are common to all riparian owners on the same body of water, and they rest entirely upon the fact of title in the fee to the shore land. Among such may be mentioned the right of accretions and the right of access. Again, there may be certain special rights peculiar to each shore owner according to the nature of his possession, which includes the character and value of his improvements. It is elementary that the shore owner may prevent an injury to his land by the lowering or raising of the waters beyond the natural limits of low and high water mark, by artificial means, not in the exercise of rights common to all, unless such act be expressly authorized by law. The extent of the injury depends upon the condition of the shore land and the nature of the possession. If there is a remedy for an injury caused by the artificial raising of the water above the natural line, thus flooding a meadow, there is also a remedy to prevent exposure of an unsightly and unhealthy marsh by artificially drawing off the water below the natural level. It is immaterial for what purpose the shore land is used, if it be a lawful use. There is no distinction in this respect between a farm and a summer residence. Employment of contiguous land for the purpose of pleasure, recreation, and health, constitutes such a use of adjacent bodies of public water as to command

a remedy for an interference with its natural condition. Kimberly v. Hewitt, 79 Wis. 334, 48 N. W. 373.

But, even if plaintiff is in a position to call upon the courts to redress an injury caused in this manner, it is claimed by defendant that it is justified in what it has done, and in continuing so to do in the future because it is only enjoying the common privilege open to the public.

Defendant is mistaken in its view of the nature of the common or public privilege of taking water or ice from the lake. Such privileges are limited to those rights which are enjoyed by the public in common with riparian owners. This privilege is based upon the consideration of its personal nature; such a right as may be ordinarily used. Any man, woman, or child is accorded an equal opportunity in the use of such advantages. The door is shut to no one, if the means of access have been provided. But the very purpose which has caused the development of the law establishing the right would be destroyed if the principle were extended to protect an unlimited traffic by shipment to a distant market. The taking of ice for the purpose of shipment to a distant market, for the purposes of sale, without regard to its effect upon the common user, is not the exercise of a common right. It is true that public waters are free and open to all for commercial purposes to the extent that common rights are not encroached upon. The taking of water or ice by common right may result in destroying the source of supply, and no riparian owner or other common user can complain. But when use is made of such water for commercial purposes, not of common right, then the right to so use ceases at the point where the conflict of interest with the common user commences.

It is true that the public itself may grant the right to do that which could not otherwise be lawfully done. Minneapolis Mill Co. v. Board of Water Commrs. of City of St. Paul, 56 Minn. 485, 58 N. W. 33. But the defendant does not claim the benefit of any such statute. On the contrary, appellant invoked to his aid Sp. Laws 1881, c. 410, which declares that White Bear lake shall forever remain free and open for the common and public use of all citizens of this state; and it is further provided that the waters of said

lake shall never be lowered or diminished by any artificial means, and be connected with, used, or applied to any use or purpose, public or private, by any person, persons, or corporation, public or private. This is a public act, dealing with the interest of the general public, and it was not necessary to plead it.

While plaintiff has a remedy independently of this statute, he is nevertheless protected by its provisions. If there is any remedy under this act for the taking of the waters of the lake by the ordinary users by common right, the state is the only party which could enforce the remedy. But the law also prohibits the taking of water by artificial means and if such taking by artificial means results in special injury to a riparian owner, as alleged in the complaint, then such owner may sue in his own name to enforce that which is declared unlawful by the statute. Within the meaning of this act, the taking of ice as a business, for shipment to a distant market for sale, is not an ordinary use of the waters by common right, but is an artificial taking.

After what has been written, it is evident that there is no defect of parties plaintiff in this action, since the plaintiff has shown himself specially affected by defendant's acts, on account of his peculiar relations to the water, not shared in common by other shore owners.

It is equally clear that there is no defect of parties defendant. So far as the complaint discloses, the use made of the waters by other persons is only such use as by common right they are entitled to.

We come now to the final position taken by respondent, and that is, conceding all other questions, still the complaint does not constitute a cause of action, because no substantial decrease in the water of the lake has been shown as a result of defendant's act in cutting ice. The learned trial judge seems to have disposed of the case upon this theory. Taking judicial notice that a cubic foot of water weighs, in round numbers, $62\frac{1}{2}$ pounds, and that water expands one-eleventh in freezing, a computation shows that seventy-five thousand tons of ice, when reduced to water, would amount to about one-quarter of an inch, when spread over the entire area of the lake. In the twelve years, this would amount to three

inches.   So small an amount of water was considered trifling, and not likely to affect plaintiff's property.   This computation, however, does not take into account the amount of evaporation caused by removing the ice, and thus exposing the water to the air.

It is further claimed that the constant falling of the water was due to other natural causes, such as the effect of drainage and tilling of the land.   In thus considering the question, an important consideration has been overlooked.   It is positively alleged in the complaint that during the twelve years there has been no water flowing out of the lake, the water level always being below the natural outlet.   If this be true, then all of the natural increase by rainfall, snow, and springs would tend to increase the volume, unless the increase were overbalanced by the natural decrease.   To whatever extent the water was reduced by defendant, to that extent the level was reduced below the natural condition. In other words, if defendant had not removed the three inches of water, that much additional water together with whatever, if any, was lost by the alleged artificial evaporation, would still be in the lake.   It would be different in the case of a running stream, where the amount taken would be immediately supplied.   Here plaintiff is entitled to the natural condition, and only asks that the result be not made worse by artificial means.

The amount of water taken is not material.   If the interference is persistent, and substantially reduces the natural level of the lake, it is sufficient.   If there was a fall of two feet in twelve years, according to the mathematical demonstration submitted by respondent, defendant is charged with causing one-twelfth of that amount.   While such amount averages small for each year, yet it is definite, persistent, and, if continued, will be serious.   Such an interference is not trivial.   It is substantial.   The amount of damages in such cases is not material, if it be some definite amount.   Potter v. Howe, 141 Mass. 357, 6 N. E. 233.   The complaint complies with these requirements, and states a good cause of action.

Order reversed.

LOVELY and BROWN, JJ. (dissenting).

The decision in this case is so at variance with the law as we understand it that we are unable to concur with the majority of the court. The substantial facts in this case are that plaintiff is the owner of a summer residence on the shores of White Bear lake, with extensive and valuable improvements thereon, and he seeks an injunction restraining defendant, a corporation engaged in storing ice for sale to the people of St. Paul and other distant points, from cutting or removing ice therefrom, upon the asserted equitable claim that its acts in that respect lower the lake one-fourth of an inch each year, and tend to render its shores unsightly and the lake unfit for pleasure. The court below held that the complaint presented no equities; that the damage resulting from a lowering of the lake one-fourth of an inch each year, if amounting to a damage or injury at all, was too trifling to warrant the serious consideration of a court of equity,—and sustained the general demurrer to the complaint. The majority of this court hold to the contrary and reverse the learned district judge. We think our associates are in error, both upon principal and authority.

In those courts where the title to the bed of navigable lakes and rivers is held to be in the state, the waters thereof are also held to be public property, held by the state in its sovereign capacity, as trustee for public use (Lamprey v. State, 52 Minn. 181, 198, 53 N. W. 1139); and the right to take ice for use or sale, or use of the waters for fishing, boating, and other lawful purposes, is common to all, and in such waters or ice the riparian owners have no special or superior right. As said in Peoples v. Davenport, 149 Mass. 322, 324, 21 N. E. 386:

"It is too well settled to be disputed that the property in the great ponds is in the commonwealth; that the public have the right to use them for fishing, fowling, boating, * * * cutting ice for use or sale, and other lawful purposes; and that the owners of the shores have no exclusive rights in them."

Such is the law in this state, unless changed by this decision. Lamprey v. State, supra. In this case it was held, as a result of

a careful review of the judicial dicta in England and in this coun-
try upon this subject, that

"Meandered lakes of this state are not adapted to, and probably
will never be used to any great extent for, commercial navigation;
but they are used—and as population increases, and towns and
cities are built up in their vicinity, will be still more used by the
people for sailing, rowing, fishing, fowling, bathing, skating, tak-
ing water for domestic, agricultural, and even city purposes, cut-
ting ice, and other public purposes which cannot now be enume-
rated or even anticipated. To hand over all these lakes to private
ownership, under any old or narrow test of navigability, would be
a great wrong upon the public for all time," etc.

We heartily concur in this view, and seriously anticipate the
result of the majority opinion, in giving to riparian owners the
power, by reason of their construction of expensive improvements
for private use upon their shore property, to interfere with the
common right of the people in these waters, will, as expressed by
the learned judge (MITCHELL, J.) in the case last cited, result in
"a great wrong upon the public for all time, the extent of which
cannot, perhaps, be now even anticipated." It was distinctly held
in Minneapolis Mill Co. v. Board of Water Commrs. of City of St.
Paul, 56 Minn. 485, 58 N. W. 33, that the rights of riparian owners
in and to public waters are subordinate and inferior to the public
uses thereof. It was further held in that case (COLLINS, J.) that
"the right to draw from them a supply of water for the ordinary
use of cities in their vicinity is such a public use, and has always
been so recognized." Such we believe to be the law everywhere,
except in Wisconsin, and perhaps some other states, where the
title to the bed of such waters is in the shore owners.

The majority opinion gives faint recognition to this principle,
but avoids its inevitable logical results on two theories, viz.: First,
that the right to take ice from such waters is individual or per-
sonal, and must be limited to quantities sufficient for personal or
individual use; and, second, that the riparian owner has in fact
special and exclusive rights in such waters, measured and fixed by
the character of his improvements upon the shore property. We
regard both theories as unsound, fallacious, inimical to the public
good, and the latter theory as judicial class legislation of a very

pronounced type. The majority say, in speaking with reference to the rights and privileges of the people to take water or ice from public waters: "This privilege is based upon the consideration of its personal nature. * * * Any man, woman, or child is accorded an equal opportunity in the use of such advantages." The effect of the holding in this case is to limit the privilege to personal necessities. None of the authorities make any such distinction. They all hold that ice may be taken for use or sale, and we have found no case where the right has been confined to personal or individual uses. The principle of law applicable to fishing or fowling is applied in the water and ice cases, and no court ever has limited the right to fish or hunt game to personal necessities.

But it is held in the majority view that a necessary distinction exists as to the limit of the use by the public, and that ice cannot be taken by the public from these lakes for such use in unlimited quantities, although we are left entirely in the dark as to what would be a proper or limited use, as distinguished from an improper and unlimited use. The legislature has not regulated this subject, and, if this court can do so, its conclusions must rest wholly upon the facts as alleged in the complaint,—that the quantity taken by defendant,—"more than seventy-five thousand tons of ice annually,—and after storing a large portion of the same in ice houses for the time being, defendant has shipped away to St. Paul and more distant marts of commerce, and disposed of the same for commercial purposes, at remote points from the shores of said lake, where no part or portion of the same can be returned to said White Bear lake." And while other causes, as set forth in the complaint, and conceded, have lowered the lake in question to the extent stated in the majority opinion, yet it was admitted by counsel on the hearing that the removal of ice therefrom by the defendant against whom the injunction is sought had only diminished the shore line, by its acts, one-quarter of an inch each year, which seems to us an insufficient basis entirely to destroy a valuable business by injunction, simply because it might be unreasonable in a case where no limit has been fixed upon the common right.

The easy solution that suggests itself, by reason of the capacity

of one person to take more ice than another, where no limits are prescribed in the law, is not by injunction to restrain a right which is common, and the effort to do so in this case gives to the shore owner a special privilege, which depends entirely upon the extent of his improvements; and this is the contention of the appellant, for upon no other ground can the relief granted be sustained. And the majority opinion is an adoption of the doctrine, that the riparian owner, by reason of extensive improvements upon his property, placed there for comfort and pleasure during the summer season, has special rights and privileges superior to the public, and other, but less pretentious, shore owners, who have not made improvements of the same character.

We are unable to give weight to the considerations which control the majority of the court. We regard the public waters of this state as the common property of all the people to the extent of such natural and reasonable uses as the necessities of life require, and it seems to us that such uses by the common people are a reality rather than a legal myth, and paramount to the individual whims, caprices, and pleasures of those who adapt their own property to luxuries. Compared to the practical benefits which the use of ice affords to the inhabitants of the cities adjoining White Bear lake, the advantages and pleasures of any shore owner are insignificant. And when a step is taken in the direction of destroying the rights of the many for the exclusive benefit of the few, by means of an injunction restraining the cutting of ice which will result in lowering the lake only one-fourth of an inch, it seems to us that there is a plain requirement for the application of the rule, "De minimis non curat lex."

If the right to take ice is a public right, as conceded, this court has no authority to say how much or how little any person can take for public use. In the absence of legislative regulation, if any unreasonable use is made of public waters, and a public injury follows, the remedy belongs to the public, as in other cases of public wrongs and nuisances. Inhabitants v. Stoddard, 7 Allen, 158–170. But to concede that ice may be taken from these lakes for common use by "every man, woman and child," and to hold that such right is limited, or in this case denied, to the defendant,

without fixing the limit, is, in effect, to give to the public a privilege which they cannot enjoy.

But if the necessity for the use is the test,—and we apprehend that the legislature and the courts can make no other,—there is nothing in the complaint that charges any unreasonable usage beyond such necessity, or extends such appropriation further than the natural and ordinary uses to which the commodity is applied, and we do not suppose that any one will claim that an unnecessary or unreasonable use will be assumed where it is not alleged. If ice cannot be taken in the way adopted by defendant, as set forth in the complaint, for use by the residents of the large cities adjoining White Bear and other lakes in their vicinity, there would seem to be but one resource left,—to manufacture that commodity, as in southern climates,—which would be very expensive, and a deprivation of its benefits to many; and, if the complaint which is upheld in this case furnishes the criterion of limitation to be applied, the means even of ice manufacture must not be taken from the lakes or streams, but the consumer must depend upon the beneficence of heaven, rather than the bounteous earth, to furnish rain for that purpose, before it has fallen into these waters and become a part thereof. This rather far-fetched conclusion seems to us but the logical reductio ad absurdum of the claim presented in the complaint.

We should long hesitate to accept a rule that would work such an injustice to the inherent rights of our people, and we do not see any particular force in the distinction between the right of the individual living in the cities adjoining the lake to take water or ice therefrom personally, and forbids him the same right when derived through the customary methods. It requires no stretch of fancy to recognize the well-known fact that but few take ice from the public waters, and place the same in receptacles for their consumption. The use of ice by the citizen, which is almost as necessary as water, depends upon the intervention of those who are engaged in the business of cutting and storing it for delivery to private persons. In a measure, such persons are the agents of all who need ice, and upon whom the people rely and depend to obtain that necessity. Such a course reduces the price of the commodity,

and furnishes benefits much more advantageously than if each individual was required to do that which many are not able to do. And if the private individual has a right to take ice for his own use, and several cannot do the same thing through another, it is, in the way we live and move and have our being at the present day, a very barren right to each.

We do not think there is any weight in the suggestion that there is no outlet to White Bear lake. It is conceded to be a public body of water, and the fact that it has no outlet is wholly irrelevant to the question. The truth undoubtedly is that this lake is fed by springs, and, like many others of the public waters of this state, by reason of the cultivation of the soil, evaporation, and other causes, has to some extent receded in the quantity of its waters, although by acts of defendant to no greater extent than three inches in twelve years, or one foot in fifty years.

The principles which we have stated above are not new, but are supported by an unbroken line of authorities of the most respectable courts in this country. Gould, Waters (3d Ed.) § 191; Brastow v. Rockport, 77 Me. 100; Woodman v. Pitman, 79 Me. 456, 10 Atl. 321; McFadden v. Haynes, 86 Me. 319, 29 Atl. 1068; Inhabitants v. Stoddard, 7 Allen, 158; Paine v. Woods, 108 Mass. 160; Hittinger v. Eames, 121 Mass. 539; Wood v. Fowler, 26 Kan. 682; Bosse v. Thomas, 3 Mo. App. 472; Brown v. Cunningham, 82 Iowa, 512, 48 N. W. 1042.

The majority opinion is based in part on Sp. Laws 1881, c. 410, and it is urged that the taking of ice from this lake amounts to an artificial lowering thereof, within the meaning of that law. While it is true that all public waters belong to the state as trustees for the whole people, and that the legislature may regulate their use, yet, if the statute referred to gives the right to prohibit the common use in opposition to those natural rights of man which transcend even the constitutional right of the citizen, it is invalid. Upon this subject we adopt the very vigorous and appropriate language of Chief Justice Beck in Brown v. Cunningham, 82 Iowa, 512, 516, 48 N. W. 1042.

"The government has no more property in the water than a

riparian owner or the public. The beneficent Creator opened the fountains which filled the stream for the benefit of His creatures, and has bestowed no power upon man or governments created by man to defeat His beneficence. Of course, the use of the water may be regulated by the state, but the state may not forbid its use to the people. As streams of water begin ex jure naturæ, they are subject, as to course and use, only to nature's law."

But it seems to us perfectly absurd to attribute to the legislature, in enacting this statute, an intention to prohibit or guard against the minor results that follow the cutting of ice, as is charged in the complaint. The cases cited in the majority opinion in support of the views of the court do not, in our judgment, sustain its conclusions. In the cases so cited it is held that a direct injury or trespass to the riparian owner, caused by the interference with the natural course of the water, is the subject of legal remedy. The distinction between those cases and the one at bar seems to us apparent. It is the broad difference between the act of a trespasser interfering with the natural flow of the water and a person exercising a common and natural right. The order of the trial court should be affirmed.