Bittenhaus vs. Johnston and another.

BITTENHAUS, Appellant, vs. JOHNSTON and another, Respondents.

*February 21 — March 27, 1896.*

*Constitutional law: Protection of fish and game: Ex post facto law: Class legislation: Distinction between localities: Destruction of property declared to be a nuisance: "Due process of law:" Compensation to owner.*

1. A general law for the punishment of offenses, which endeavors by retroactive operation to reach acts before committed, and also provides a like punishment for the same acts in the future, is void only so far as it is retrospective, and valid as to future cases within the legislative control.

2. An act (ch. 221, Laws of 1895) regulating the method and times of catching fish in the waters of this state is not, in the absence of

any constitutional provision against it, invalid as class legislation because it makes different regulations for different waters, or contains certain provisions applying to certain localities or waters only, or wholly exempts certain waters from all such regulations.

3. Such act does not, merely because it discriminates between different localities and waters and between different kinds of fish, deny to any person "the equal protection of the laws," within the meaning of sec. 1, art. XIV, Amendm. Const. of U. S., nor make any distinction between resident aliens and citizens in reference to the possession or enjoyment of property, in violation of sec. 15, art. I, Const. of Wis.

4. Provisions of such act declaring that nets in unlawful use are public nuisances, making it the duty of wardens and peace officers to destroy the same forthwith when found in such unlawful use, and exempting said officers from all liability to the owners for such destruction, are not repugnant to sec. 1, art. XIV, Amendm. Const. of U. S. (declaring that no state shall "deprive any person of . . . property without due process of law"), nor to sec. 9, art. I, Const. of Wis. (declaring that "every person is entitled to a certain remedy in the laws for all injuries" to his property).

APPEAL from a judgment of the county court of Winnebago county: C. D. CLEVELAND, Judge. *Affirmed.*

Replevin. The opinion states the facts.

*H. J. Gerpheide* and *W. W. Waterhouse,* for the appellant.

For the respondents there was a brief signed by *C. E. Whelan,* special counsel State Fish & Game Warden, and *Thompson, Harshaw & Thompson,* of counsel, and oral argument by *Mr. Whelan* and *Mr. H. B. Harshaw.* They argued, among other things, that ch. 221, Laws of 1895, does not constitute class legislation, but is a valid and proper exercise of the police power of the state. The state owns, or rather holds in trust for the whole people, the title to the fish in the waters and the game in its wild state. When, therefore, the state makes laws with reference to game or fish or other creatures *feræ naturæ,* it is exercising its dominion over its own property, and has the absolute right to determine when, how, and where fish and game may be

Bittenhaus vs. Johnston and another.

taken.  4 Bl. Comm. 174; *Burnham v. Webster*, 5 Mass. 266;. *Nickerson v. Brackett*, 10 id. 212; *Gentile v. State*, 29 Ind. 409; *State v. Norton,* 45 Vt. 258; *Magner v. People*, 97 Ill. 320.  With the policy or wisdom of the enactment the courts have nothing to do.  Tiedeman, Lim. of Police Power, § 2;. Cooley, Const. Lim. (4th ed.), 168; *Munn v. People*, 69 Ill. 93.  Sec. 1, art. XIV, Amèndm. Const. of U. S., and sec. 15,. art. I, Const. of Wis., apply to the person, not to the place.  If the law had declared that citizens residing on or about the waters of Rush Lake should be exempt from the operation of the law, while citizens living on or about the borders of Lake Winnebago should be held amenable to the law, the objection that this was class legislation might be well taken; but the law says simply that all citizens of the state shall be prohibited from doing certain acts except in certain localities.  This cannot be held to constitute class legislation. *Soon Hing v. Crowley*, 113 U. S. 703; *Blount v. Walker,*. 134 id. 607; *Farmers' L. & T. Co. v. C., P. & S. R. Co.* 39 Fed. Rep. 155; *Minn. v. Barber*, 136 U. S. 320; *Chaffee Co. v. Potter*, 142 id. 355; *Electric Imp. Co. v. San Francisco,*. 45 Fed. Rep. 595; *In re Haskell*, 52 id. 795; *Angle v. C., St.. P., M. & O. R. Co.* 151 U. S. 45.  The law is not unconstitutional as depriving persons of property without due process of law.  There is no right inherent in the individual,. either expressed or implied, respecting the taking of game or fish, and consequently nothing is taken away from the individual when he is denied the privilege of taking game or fish.  *Magner v. People*, 97 Ill. 320; *People v. Brooks*, 101 Mich. 98; *People v. Collison*, 85 id. 105; *Mugler v. Kansas,*. 123 U. S. 623.  That the statute prevents the using of nets in the waters where they formerly had been used is true;. but there was no prescriptive right obtained, nor could there be, by which the fishermen would be perpetually permitted to use nets in these waters.  8 Am. & Eng. Ency. of Law, 35; *Parker v. People*, 111 Ill. 581.  A statute for the pro-

tection of fish and game is a public advantage to which private interests must conform. *Phelps v. Racey*, 60 N. Y. 10; *State v. Randolph*, 1 Mo. App. 15. Due process of law is not judicial process necessarily, but is that process which the law prescribes. In *San Mateo Co. v. S. P. R. Co.* 8 Am. & Eng. R. Cas. 27, it is said: "By 'due process' is meant one which, following the forms of law, is appropriate to the case and just to the parties to be affected. It must be pursued in the ordinary manner prescribed by law; it must be adapted to the end to be attained. Notice is absolutely essential to the validity of the proceeding in any case. It may be given by personal citation; *it may be given by statute.*" In the case at bar it is not disputed that the provisions of the statute were complied with by the officers; that the statute authorized them to take and summarily destroy the nets which they found in the inland waters of the state, which inland waters are specifically defined. The statute under which their acts were performed was a public law, of which the owners were bound to take notice. The property was placed in the situation which the law declared would subject it to seizure. It must have been and it is so admitted to have been placed in said waters by the appellant in open violation of the law. When, therefore, the officers of the state, acting under the authority conferred on them by ch. 221, Laws of 1895, removed and summarily destroyed such property, they did so by due process of law. The nets were declared by the statute to be public nuisances. The legislature may enlarge into a nuisance that which at common law was not a nuisance, or may declare that not to be a nuisance which the common law invests with that term. *Coe v. Schultz*, 47 Barb. 65; *Matter of Jacobs*, 98 N. Y. 98, 108, 109; *Reg. v. Crawshaw*, Bell, C. C. 303, 30 L. J. M. C. 58; *McLaughlin v. State*, 45 Ind. 338; *Monroe v. Grespach*, 33 La. Ann. 1011; *State v. Towler*, 13 R. I. 661; *Miller v. New York*, 109 U. S. 385; *Leigh. v. Westervelt*, 2 Duer, 618;

*Harris v. Thompson,* 9 Barb. 350; *Griffith v. McCullum,* 46 id. 561; *Babcock v. Buffalo,* 56 N. Y. 268; *Hart v. Albany,* 3 Paige, 213; *Harrower v. Ritson,* 37 Barb. 301; *Kellogg v. Thompson,* 66 N. Y. 88; *Rockwell v. Nearing,* 35 id. 302; Wood, Nuisances, 1; *Weller v. Snover,* 42 N. J. Law, 341; *Williams v. Blackwell,* 2 Hurl. & C. 33. The right of the state to provide for the summary abatement of a nuisance of this character is settled by the case of *Lawton v. Steele,* 119 N. Y. 226, approved and affirmed in 152 U. S. 136. That the state possesses ample authority to rid the fisheries of such devices as are, destructive of them, without judicial proceedings against the offending owners who have constructed or placed such devices in the fisheries in violation of the law protecting them, has been repeatedly held. *Phelps v. Racey,* 60 N. Y. 10; *Weller v. Snover,* 42 N. J. Law, 341; *Wagner v. People,* 97 Ill. 332, 337; *Williams v. Blackwell,* 2 Hurl. & C. 33; *Smith v. Levinus,* 8 N. Y. 472. And the United States court has gone farther than that and declared that a state has the right to inflict the penalty of forfeiture upon a vessel violating the laws protecting its fisheries, and that too notwithstanding the vessel which is forfeited is enrolled and licensed under an act of Congress. *Smith v. Maryland,* 18 How. 71. The right of seizure of property has been also expressly sustained in *American Print Works v. Lawrence,* 21 N. J. Law, 248; *Hale v. Lawrence,* id. 714; *American Print Works v. Lawrence,* 23 id. 590; *Haney v. Compton,* 36 id. 507.

CASSODAY, C. J. This is an action of replevin, commenced August 9, 1895, before a justice of the peace in Oshkosh, to recover twelve gill nets, of the value of $60, alleged to have been unjustly taken and detained by the defendants. The defendants answered by way of denials, and justified the seizure and destruction of the nets as fish and game wardens of the state, under ch. 221, Laws of 1895. On the trial be-

fore the justice the plaintiff proved the ownership and value
of the nets, and admitted that he had placed the nets in the
waters of Lake Winnebago for the purpose of fishing, and
that the defendants were such fish and game wardens. The
defendants admitted that they, as such fish and game war-
dens, took the nets from such waters and destroyed them.
A trial by jury having resulted in a verdict in favor of the
defendants, judgment was entered thereon accordingly, from
which the plaintiff appealed to the county court. Upon the
trial in that court it was stipulated that the case be decided
by the court upon the record certified by the justice; and it
was thereupon decided accordingly by that court in favor
of the defendants. From the judgment entered therein, in
favor of the defendants, and upon the certificate of the trial
judge as required by ch. 215, Laws of 1895, the plaintiff
brings this appeal.

Ch. 221, Laws of 1895, appears first on pages 367–396, in-
clusive, and again on pages 397–426, inclusive. There are
some discrepancies between the chapter as thus first pre-
sented and as thus subsequently presented; but they both
purport to have been approved and published on the same
day, and they both have the same title, and are numbered
the same, and are the same throughout except in certain
particulars not material on this appeal, since the portions of
the act here involved are the same in both publications.
Counsel contend that the act in question is unconstitutional
and void upon several grounds.

1. It is claimed that certain clauses of the act are repug-
nant to the constitutional provisions which declare that:
"No . . . ex post facto law . . . shall ever be
passed." Const. Wis. art. I, sec. 12. "No state shall . . .
pass any . . . ex post facto law." Const. U. S. art. I, sec.
10. "By an ex post facto law," said FIELD, J., "is meant one
which imposes a punishment for an act which was not pun-
ishable at the time it was committed, or imposes additional

punishment to that then prescribed, or changes the rules of evidence, by which less or different testimony is sufficient to convict than was then required." *Cummings v. Missouri,* 4 Wall. 325, 326. See, also, *Medley, Petitioner,* 134 U. S. 160; *Duncan v. Missouri,* 152 U. S. 377. This rule is uniformly recognized in all well-considered adjudications upon the subject. It is equally well settled that a general law for the punishment of offenses, which endeavors by retroactive operation to reach acts before committed, and also provides a like punishment for the same acts in the future, is void only so far as it is retrospective, and valid as to future cases within the legislative control. *Jaehne v. New York,* 128 U. S. 189. In the case at bar the act complained of was committed nearly four months after the passage and publication of the law in question, and hence that chapter cannot be regarded as an *ex post facto* law as to that act. This being so, we are not called upon to determine whether any provision of the chapter was thus retroactive, and hence, to that extent, an *ex post facto* law.

2. Counsel contend that the law in question is class legislation, and therefore void. This seems to be put on the ground that the act makes certain "regulations for the outlying waters of the state" (secs. 12–15), and certain other "regulations for the inland waters" of the state (sec. 16), and certain "provisions applying to certain localities or waters only" (secs. 33–38a); and particularly because "the waters of Rush Lake" are thereby "exempted from the provisions" of the "act relating to regulations upon the methods or times of taking, catching or killing fish" (sec. 36). We are referred to no clause of our state constitution which condemns such legislation as class legislation, and we have found none. It certainly does not belong to any of the nine classes of cases in regard to which "the legislature is prohibited from enacting any special or private laws." Const. art. IV, sec. 31. The constitutions of some of the states ex-

pressly prohibit every kind of local or special legislation. As indicated, such prohibition in this state is only partial. As often said and always conceded, our state constitution is not so much a grant as a limitation of powers; and hence the state legislature has authority to exercise any and all legislative powers not delegated to the federal government nor expressly or by necessary implication prohibited by the national or state constitution. *State ex rel. Graef v. Forest Co.* 74 Wis. 615; *State ex rel. Lamb v. Cunningham,* 83 Wis. 146. The law in question is entitled "An act to revise, amend and consolidate the laws of the state relating to game and its preservation, fish and the preservation and propagation thereof." To legislate intelligently upon such a subject there must be a legislative discretion as to the different kinds of fish and as to the different waters in which they are or may be found. The exercise of such legislative discretion in the instant case does not seem to be condemned as class legislation by any clause of our state constitution.

3. But it is claimed to be class legislation within the meaning of the clause of the federal constitution which declares that "no state shall make or enforce any law which shall . . . deny to *any person* within its jurisdiction the equal protection of the laws." Amendm. art. XIV, sec. 1. This clause was clearly intended to prevent hostile discrimination against any individual, or class of individuals, by the statutes of any state. *Slaughter-House Cases,* 16 Wall. 36; *Pembina C. S. M. & M. Co. v. Pennsylvania,* 125 U. S. 188; *In re Kemmler,* 136 U. S. 448. "Class legislation, discriminating against some and favoring others, is prohibited; but legislation which, in carrying out a public purpose, is limited in its application, if, within the sphere of its operation, it affects alike all persons similarly situated, is not within the amendment." *Barbier v. Connolly,* 113 U. S. 32. In speaking of that constitutional provision, it was said by Mr. Justice FIELD that it "does not prohibit legislation which is

limited either in the objects to which it is directed or by
the territory within which it is to operate. It merely re-
quires that all persons subject to such legislation shall be
treated alike, under like circumstances and conditions, both
in the privileges conferred and in the liabilities imposed."
*Hayes v. Missouri*, 120 U. S. 71. There is no pretense that
the act in question contains any hostile discrimination
against any person or any class of persons. True, it makes
certain things unlawful, and prescribes certain penalties,
forfeitures, and punishments for violations of the law, but
they are alike applicable to any and all persons who violate
the law. Under the authorities cited, it is very clear that
the mere fact that the statute in question is applicable to
certain localities and waters, and discriminates between dif-
ferent kinds of fish, does not make it class legislation, within
the meaning of the clause of the federal constitution quoted.

4. Among other things, the statute in question provides
that " the powers and duties of such fish and game wardens
shall be  .  .  .  *to seize, remove and forthwith destroy any
net,* pound or other device *found in the inland waters of this
state* or in the possession of any person or persons intending
to use the same for fishing, or having removed or being in
the act of removing the same from any of the waters where
the fishing with nets or devices or the setting of the same
is prohibited or illegal under this act, or any law of the
state, *and which are declared* to be public nuisances." Sec.
9, subd. 4. " No person shall be allowed to set, place or use
any gill, fyke, pound, seine, dip or other net or snare, or
trap, in any of the inland waters of the state of Wisconsin
for the purpose of catching fish of any variety," except as
therein otherwise provided, and which is not material here.
Sec. 16. "Any net of any kind prohibited by law, while
set or found in any waters where such net is prohibited by
law from being set or used," is therein " declared to be a
public nuisance." Sec. 19, subd. 1. The illegal use of such

net contrary to the provisions of the act forfeits the same to the state. Id. subd. 10. It is thereby made the duty of such wardens to destroy the same forthwith, as a public nuisance, " when found or taken in the unlawful use, . . . . and no liability shall be incurred to the owner or to any other person for such destruction." Sec. 20.

It is conceded that the plaintiff's nets were seized by the defendants, as such wardens, while they were in such unlawful use, and thereupon forthwith destroyed by them. Counsel for the plaintiff frankly admits that " the only issue involved is the constitutionality of said law." But, in addition to the grounds stated, they contend that the statute in question is repugnant to that clause of the federal constitution which declares, " nor shall any state deprive any person of life, liberty or property without due process of law." Amendm. art. XIV, sec. 1.

" Due process of law," said WAITE, C. J., " is process due according to the law of the land. This process, in the states, is regulated by the law of the state." *Walker v. Sauvinet,* 92 U. S. 90, 93. In other words, in matters of state jurisprudence the law of the state is the law of the land. " Legislation is not open to the charge of depriving one of his rights without due process of law, if it be general in its operation upon the subjects to which it relates, and is enforceable in the usual modes established in the administration of government with respect to kindred matters; that is, by process or proceedings adapted to the nature of the case." *Dent v. West Virginia,* 129 U. S. 114. " Due process of law, and the equal protection of the laws, are secured if the laws operate on all alike, and do not subject the individual to an arbitrary exercise of the powers of government." *Duncan v. Missouri,* 152 U. S. 377; *Leeper v. Texas,* 139 U. S. 462. But neither that provision nor any other provision of the constitution of the United States " was designed to interfere with the power of the state, sometimes termed its 'police power,'

to prescribe regulations to promote the health, peace, morals, education, and good order of the people, and to legislate so as to increase the industries of the state, develop its resources, and add to its wealth and prosperity." *Barbier v. Connolly*, 113 U. S. 31; *Mugler v. Kansas*, 123 U. S. 623; *In re Kemmler*, 136 U. S. 448; *State v. Heinemann*, 80 Wis. 253. "The police power of a state is as broad and plenary as the taxing power." *Kidd v. Pearson*, 128 U. S. 1.

In the recent case of *Lawton v. Steele*, 152 U. S. 133, 136 (affirming 119 N. Y. 226), Mr. Justice BROWN, speaking for the court, has enumerated a great variety of cases which have been sustained under the police power, and adds, "Beyond this, however, the state may interfere wherever the public interest demands it, and in this particular a large discretion is necessarily vested in the legislature to determine, not only what the interests of the public require, but what measures are necessary for the protection of such interests." The decision in that case sustained the validity of a statute substantially like the one in question, and it was there held that such seizure and destruction of the nets was a lawful exercise of the police power of the state, and did not deprive the citizen of his property without due process of law; and such decision was put upon the ground that "it is within the power of a state to preserve from extinction fisheries in waters within its jurisdiction, by prohibiting exhaustive methods of fishing, or the use of such destructive instruments as are likely to result in the extermination of the young as well as the mature fish."

The plaintiff, having voluntarily put the nets to an unlawful use which made them public nuisances under the statute, is in no position to recover damages from the defendants for having, as public officials, obeyed the law in abating the nuisances by seizing and destroying the nets. Of course, the plaintiff had his right of action to determine whether the nets were or were not in such unlawful use. We must

hold that the plaintiff has not been deprived of his property without due process of law.

5. The reasons given for holding that the statute in question is not repugnant to the federal constitution in the particulars mentioned make it sufficiently clear that it is not repugnant to that clause of our state constitution which declares that " every person is entitled to a certain remedy in the laws, for all injuries" to his property; nor that other clause, cited by counsel, which declares that "no distinction shall ever be made by law, between resident aliens and citizens, in reference to the possession, enjoyment or descent of property." Const. art. I, secs. 9, 15.

It will be observed that we have confined our opinion to the validity of so much of the chapter in question as is applicable to the particular facts here present, and have carefully refrained from expressing any opinion as to the validity of the act in other respects.

*By the Court.*— The judgment of the county court of Winnebago county is affirmed.

The right to compensation for property destroyed in abating a public nuisance is considered in a note to *Orlando v. Pragg* (31 Fla. 111) in 19 L. R. A. 196.— REP.