The Board of Park Commissioners of the City of Des Moines, Iowa, Appellant, v. The Diamond Ice Company, The Des Moines Ice Company, and The Arctic Ice Company.

**Water courses:** CONTROL BY PARK BOARD: CONSTRUCTION OF STATUTE. Under the authority conferred upon the Board of Park Commissioners of Des Moines by chapter 197 of the laws of the 28th General Assembly, the board may prohibit the taking of ice for commercial purposes from any portion of the Des Moines river, within the territory over which it has jurisdiction, notwithstanding the provision therein that vested rights of other riparian owners shall not be affected by the act.

**Water courses:** TITLE TO ICE. Where the bed of a stream is public property, a riparian owner acquires no vested right to the ice formed in the stream by the erection of improvements on his land, or by having harvested ice therefrom.

**Same:** RIGHTS OF PUBLIC: STATE REGULATION. All persons have a common right to the legitimate use and enjoyment of a stream the title to which is in the state, but no one will be permitted to exercise a single right to the exclusion of all others, and it is the duty of the state to enact such laws as will preserve its use to all persons and for all purposes.

**Constitutional law:** DUE PROCESS OF LAW: STATUTES. A legislative act which destroys no right in a public stream but simply regulates its common use, is not violative of the federal or state constitution as depriving a citizen of property without due process of law; nor is it void as against public policy.

*Appeal from Polk District Court.*— Hon. A. H. McVey, Judge.

Tuesday, October 24, 1905.

Rehearing denied May 24, 1906.

Suit in equity to restrain the defendants from cutting and removing ice from the Des Moines river, and from

placing obstruction on the ice within certain limits speci-
fied in the petition.  The petition alleges that the portion
of the river bed and banks, from which it is sought to ex-
clude the defendants, is a portion of Union Park and sub-
ject to the jurisdiction and control of the board of park
commissioners of the city of Des Moines, by virtue of
chapter 179, Acts of the Twenty-Eighth General Assem-
bly.  It is also shown by the petition that the Arctic Ice
Company occupies under lease land abutting upon the river
within said limits, and that the Diamond Ice Company
also owns land abutting upon the river within said limits,
on which are buildings used for storing ice taken from the
river, and that the Des Moines Ice Company owns no real
estate abutting upon the river within said limits.  The
petition further alleges that the board of park commission-
ers has prohibited the taking of ice from the river or the
placing of obstructions thereon within said limits.  A de-
murrer to the petition was sustained, and the suit dis-
missed.  The plaintiff appeals.— *Reversed.*

*Read & Read,* for appellants.

*Thos. A. Cheshire,* for appellees.

SHERWIN, C. J.— Chapter 179, Laws of the Twenty-
Eighth General Assembly, provides that " whenever now
or in the future any public street, highway, public
ground, or park, owned by the city of Des
Moines, or by the public, or owned or con-
trolled by the board of park commissioners of
said city, abuts upon either bank of the Des Moines river,
the portions of the said river banks on which the same abut
situated below high-water mark and also the bed of the
river to the opposite shore line thereof, and the river itself
within the limits aforesaid, are to be subject to the opera-
tion of this act, provided that the fee title to such bed and

1. WATER
   COURSES: con-
   trol by park
   board: con-
   struction of
   statutes.

banks shall remain in the state, and the vested rights of other riparian owners shall not be affected by this act."

Section 2 of the act provides that " jurisdiction and control for park purposes and for the purposes herein specified are hereby vested in the board of park commissioners of the city of Des Moines over the said river and the bed and banks thereof within the limits specified in section one of this act; and said board shall have power to use such portion of its funds as may be available to improve and utilize the same for the public use and pleasure, and to exercise in respect thereto the general powers as to parks conferred by section 850 to and inclusive of section 858 of the Code. Said board shall have power to straighten, cut away, or fill in said river banks and to preserve the same by walls, piling, levees, or otherwise; to excavate, remove sandbars or other obstructions from and otherwise improve the bed of said river so as to make it available for boating, skating and other sports."

The same section also confers authority to bridge the river, and, upon conditions, to construct a dam below the present dam. Section 3 of the act gives the board of park commissioners power " to construct and regulate the use of wharves, landing places, bath houses, boat houses, and other suitable structures," and, further provides that, " if said board shall by the construction of a dam at public expense below the present dam hold back and maintain a bed of water suitable for boating, skating, and other sports, it shall have exclusive jurisdiction over such water between such dams, and the ice formed thereon for park purposes and may prohibit the taking of ice therefrom by riparian owners or other persons. . . . The improvement and use of said river for boating, skating, and other similar sports shall be deemed park purposes within the meaning of this act and the general law."

The appellant's action is founded on the powers conferred upon it by the act under consideration, and the de-

murrer challenges the scope of the act; the appellee contending that under its provisions the plaintiff has no authority to exclude the defendants from taking ice from that portion of the river above the present dam, and its constitutionality, because the defendants' rights were vested before the act was passed, and because it is violative of the fourteenth amendment of the Constitution of the United States, and of section 18 of article 1 of the Constitution of the state. It is said that the provision that "the vested rights of other riparian owners shall not be affected by this act" was intended to except the defendants from the operation of the statute and to reserve to them the rights they were enjoying at the time of its passage; and, further, that the exclusive jurisdiction expressly given by section 3 of the act limited the power of the commissioners to the control of the ice formed below the present dam. The act as a whole is not very harmonious, nor is its meaning entirely clear. In my opinion the third section, construed in connection with the provision of the first preserving vested rights, quite clearly indicates an intention to limit the powers of the board over the ice to that formed on the water below the present dam. But the other members of the court are of opinion that the specification of power to prohibit taking ice from this particular portion of the river does not exclude the power to prohibit the taking of ice from the other portions thereof above the present dam, because, if the board does not have the latter power, the purposes of the entire statute would be defeated; and it is thought that the provision of section 1, referred to, was put into the act for the purpose only of preserving such rights as were in fact and in law vested at that time. Of course, the language used, construed literally and alone, means precisely that, but the provision was wholly unnecessary for that purpose, and, if so construed, it is meaningless, because the courts will protect vested rights without legislative authority.

Congress declared the Des Moines river to be a public

highway in 1846, but the act was repealed in 1870. The river was meandered, however, and the title to its bed is conceded to be in the state in trust for the use of the public. In determining the validity of the act in question, it is necessary therefore to look to the rights of the defendants as riparian owners, and to their rights in common with the general public growing out of the public ownership of the bed of the stream. It is the settled rule in this state that, where the bed of the stream is public property, the owners of land bordering on the stream have no title to the ice which forms thereon as incident to their ownership of the banks. *Brown v. Cunningham,* 82 Iowa, 512; *Serrin v. Grefe,* 67 Iowa, 196; *Marsh v. McNider,* 88 Iowa, 390. And such seems to be the rule in most, if not in all, of the other states. See, on the subject, 2 Current Law, 2035; Gould on Waters (3d Ed.) section 191, and cases cited; *Sanborn v. People's Ice Co.,* 82 Minn. 43 (84 N. W. 641, 51 L. R. A. 829, 83 Am. St. Rep. 401). If riparian ownership carries with it no right to the ice formed on public waters, it is clear that there can be no vested right to such ice because of the improvements on the land, or because of the length of time the riparian owner has harvested ice therefrom. The right being common, one member of the public has the same right to the ice that another has, and it is only by an actual appropriation thereof each year that any right thereto can be acquired. *Becker v. Hall,* 116 Iowa, 589, and cases *supra.*

*2. Water courses: title to ice.*

It may readily be conceded that the state may not deny the right to take ice from a public stream any more than it may interfere with the common right to take water therefrom, or of fishing therein, and yet all of the authorities hold that such rights are the subject of reasonable regulations. Brown v. Cunningham, *supra;* Gould on Waters, 189; *Barrows v. McDermott,* 73 Me. 441; *Woodman v. Pitman,* 79 Me. 456 (10 Atl. 321, 1 Am. St. Rep. 342); *Rossmiller v. State,* 114

*3. Same: rights of public: State regulation.*

Wis. 169 (89 N. W. 839, 58 L. R. A. 93). The public right which every inhabitant may exercise is not confined to taking ice, fishing, etc. The right to use the stream for boating, skating, and other sports is also included therein. It is therefore manifest that the defendants have no rights which may be exercised to the exclusion of all others, and, the ownership of the stream being in the state in trust for all of the people, it is the duty of the Legislature to enact such laws as will best preserve its use for all persons, and for all purposes. And if it does no more than this, its regulations are not unreasonable. *Commonwealth v. Gilbert,* 160 Mass. 157 (35 N. E. 454, 22 L. R. A. 439) *Com. v. Perley,* 130 Mass. 469; *Organ v. State,* 56 Ark. 267 (19 S. W. 840); *Bittenhaus v. Johnston,* 92 Wis. 588 (66 N. W.. 805, 32 L. R. A. 380); Cooley's Constitutional Limitations (6th Ed.) 643. The allegations of the petition bring the case clearly within the principle of the rule, and we must hold that the act is a reasonable exercise of such legislative power.

The statute does not in our judgment violate the Constitution of the United States or the Constitution of the state. It does not take from the defendants, or others, any property, but merely regulates the use that may be made of a common public right. Cooley's Constitutional Limitations, 666. The substitution of one public use to the exclusion of other public uses is not an invasion of a right of property, within the meaning of either constitution. Cooley, *supra;* *McManus v. Carmichael,* 3 Iowa, 1; *Cook v. City of Burlington,* 30 Iowa, 94; *Illinois Cent. Ry. Co. v. Illinois,* 146 U. S. 387 (13 Sup. Ct. 110, 136 L. Ed. 1018).

4. CONSTITU-
TIONAL LAW:
due process of
law: statutes.

It is suggested that if the act is constitutional it is against public policy, and is therefore void. A legislative act, if constitutional, declares in terms the policy of the state and is final so far as the court is concerned. *Kuhn v. Kuhn,* 125 Iowa, 449.

The demurrer should have been overruled, and the judgment is therefore *reversed.*