PARSONS *v.* E. I. DU PONT DE NEMOURS POWDER CO.

1. NAVIGABLE WATERS—RIGHTS OF PUBLIC—RIGHTS OF RIPARIAN OWNERS.

The public has the right to use a navigable stream in its fluid state for navigation purposes and in its frozen state for the purpose of traversing its surface, with due regard to the rights of riparian owners to its use for their own purposes.

2. SAME.

Frozen navigable rivers are public highways and the traveler ordinarily has the paramount right of passage as necessarily incident to the reasonable enjoyment of his right, but it must be exercised in common with such uses as the frozen surface of the river is adapted to.

3. SAME.

Where a gas reducing plant discharges warm water into a stream and melts the ice in the winter time for some distance and makes the ice soft around the opening and causes the accumulation on the surface of the open water of a substance resembling ice, the owner must, in the exercise of its rights, proceed in such a manner as to least endanger the lives of skaters on the ice and others.

4. NEGLIGENCE—HOLES IN ICE—BARRIERS—QUESTION FOR JURY.

In an action against the owner of a gas reducing plant to recover for the death of plaintiff's son, due to falling into the river through soft ice at an open place caused by the melting of the ice by the discharge of warm water from the plant, *held*, that it was a question for the jury whether defendant should not have taken means to provide some barrier or guard, or have given warning of the dangerous condition of the ice.

5. DEATH—WITNESSES—DEATH BY DROWNING—PRESUMPTIONS.

Where there are no eyewitnesses to the instantaneous death of a boy by drowning by falling through soft ice in a river while skating, it must be presumed that he was in the exercise of due care at the time of his death.

6. NEGLIGENCE—DEATH BY DROWNING—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

In an action against the owner of a gas reducing plant for

the death of a boy seven years old by drowning caused by falling, while skating, through soft ice near an opening in the ice caused by warm water from the plant, there being no eyewitnesses to the accident and it appearing that the scum that gathered on the opening had the appearance of dark ice, it was a question for the jury whether decedent was guilty of contributory negligence.[1]

Error to Bay; Coumans, J. Submitted June 14, 1917. (Docket No. 47.) Decided September 27, 1917.

Case by Amos J. Parsons, administrator of the estate of Verne Oscar Parsons, deceased, against the E. I. Du Pont De Nemours Powder Company for the negligent killing of plaintiff's decedent. Judgment for defendant on a directed verdict. Plaintiff brings error. Reversed.

*De Foe & Converse* and *C. A. Higgs,* for appellant.

*Weadock & Duffy* (*Russell H. Neilson,* of counsel), for appellee.

KUHN, C. J. The son of the plaintiff, Verne Parsons, aged 7 years and 3 or 4 months, was drowned while skating on the Saginaw river at Bay City, Mich., in the latter part of the afternoon of January 12, 1915. The Saginaw river is one of the large navigable rivers of this State, and as it passes through Bay City on its course to Saginaw Bay, it divides for a distance into two channels, the east channel being the main channel of the river. The west channel, where the accident occurred, is about 200 feet in width, and is also conceded to be a navigable stream, having been used for a great many years for commercial purposes, and during the winter months has been used by the public generally for skating, fishing, and drawing of logs, hay, and ice. The defendant company

[1] This case will be annotated on the question of liability of one who renders ice unsafe for skating or travel, L. R. A. 1918A.

owns and operates a plant which faces upon the Saginaw river on this west channel. This plant is used for the manufacture, among other things, of charcoal, acetate of lime and wood alcohol. One of the buildings of the plant, which is known as the "still house," is used by the company for the purpose of reducing the gas obtained from the reduction of wood to charcoal, into its various chemical properties. After the gases have been gathered from the retorts, they are conveyed to the still house and passed through a series of condensors, where by the use of water the gases are condensed to a liquid state. The company, in order to properly reduce these gases to a liquid state, have installed 12 pumps, which are used for pumping the water from the Saginaw river, conveying it to the plant, forcing it around the condensors, and then returning it to the river through a sewer. This use of the water raises its temperature from that of the water taken from the river to that of about 70 or 80 degrees. About a million gallons are used each day. By the returning of this amount of warm water to the river during the winter months the ice is melted at the place where the sewer empties into the river, creating an open place, the size of which at the time of the accident was about 65 feet across the river and 115 feet along the shore. At the time of the drowning there were no barriers or guards or notices of any kind around this opening in the ice, and for a distance of 6 or 7 feet from the open water the testimony shows the ice was thin and soft and unsafe. There was also testimony to show that this open water was covered with a tar scum, which did not look unlike the ice, and which was described by one of plaintiff's witnesses, in answer to a question, as follows:

"*Q.* Give the jury some idea of what that scum or substance laying there is like as you approach it on the ice; what it looks like.

"*A.* Kind of dirty, soapy like stuff, tar mixed with it, floats around on the surface; it looks as though it was good ice."

Plaintiff's decedent, on the day in question, left his home during the absence of his father from the house, but with the permission of his sister, who was at home taking care of him, and went to the river to skate. Upon his father's return, the boy was reported missing, and the father, with others, went to the river to find him. They found the skate tracks on the ice, leading up to the open water, indicating that he had broken through the soft ice as he approached the opening, and after a search, the body was found in the river near where the skate tracks ended.

This action was brought under sections 10427 and 10428, 3 Comp. Laws (3 Comp. Laws 1915, §§ 14577, 14578), known as "Lord Campbell's act," and commonly called the "death act." The trial judge directed a verdict for the defendant on the ground that the plaintiff had not established any negligence on the part of the defendant, or that the plaintiff's decedent was free from negligence at the time of the accident. Whether or not the trial judge was correct in directing a verdict for the reasons stated is the question before us for determination.

That the defendant company had the right to the use of the ice abutting to the land on which its plant was located is not questioned by counsel in this case. In fact, counsel for both parties cite practically the same authorities, and the difficulty rather is in their application to the facts in this case. We cannot accede to the contention that the plaintiff's decedent was a trespasser. This was concededly a navigable stream, and the public had a right to use it in its fluid state for navigation purposes, and also had a right to traverse its surface, when congealed, with due regard to the rights of the riparian owners to its use for their

own purposes. Neither of these rights, however, could be exercised to the exclusion of the other, and the rule seems to be well stated in *Woodman* v. *Pitman*, 79 Me. 456 (10 Atl. 321, 1 Am. St. Rep. 342), where it is said:

"Frozen navigable rivers are public highways, and the traveler ordinarily has the paramount right of passage as necessarily incident to the reasonable enjoyment of his right, but it must be exercised in common with such uses as the frozen surface of the river is adapted to. One such use is the harvesting of ice, a use that may impede travel. Both are common rights, and both may be lawfully exercised; but both cannot be enjoyed at the same spot at the same time, because the one may be there destructive of the other, so that it may be reasonable for that use, giving the larger public benefit to restrict other uses to a narrower compass, but it cannot lawfully monopolize the whole right to the utter destruction of all other rights."

In an early case, *French* v. *Camp*, 18 Me. 433 (36 Am. Dec. 728), Chief Justice Weston said:

"It is contended, that the defendants had an equal right to cut a hole in the ice, to water their horses or other cattle, or for other purposes. Assuming that the defendants have as good a right to the use of the water, as the plaintiff or the public generally had to the right of passage, the use of a common privilege should be such as may be most beneficial and least injurious to all who have occasion to avail themselves of it. To cut a hole in the center of a road upon the ice, or so near it as to entrap a traveler, is a wanton and unnecessary disturbance of the right of passage. It is making an improper use of a part of the river, lawfully appropriated for the time being, to a different purpose. It is a direct violation of that great principle of social duty, by which each one is required so to use his own rights as not to injure the rights of others."

See, also, *Board of Park Com'rs* v. *Diamond Ice Co.*, 130 Iowa, 603 (105 N. W. 203, 3 L. R. A. [N. S.] 1103, 8 Am. & Eng. Ann. Cas. 28) ; *Pennock* v. *Mitch-*

*ell*, 17 Ont. L. Rep. 286, 14 Am. & Eng. Ann. Cas. 363.

Applying the principles of these decisions to the facts before us, we think it reasonable to hold that it was the duty of the defendant, in the exercise of its rights, to proceed in such a manner as to least endanger others in the exercise of the rights which the law accorded to them. They, by the operation of their plant, made unsafe a portion of the river which otherwise would have been safe for the public's right of passage thereover, and in our opinion it was at least a question for the jury to determine whether or not, in the exercise of reasonable prudence, the defendant should not have taken means to provide some barrier or guard, or have given warning to the public of the dangerous condition of the ice, which had been created by it.

Neither are we satisfied that we should say, as a matter of law, that the plaintiff's decedent was guilty of contributory negligence. It must be kept in mind that this boy met an instantaneous death, and, there being no eyewitnesses, so far as the record shows, of his death, there is the presumption that he was in the exercise of all due care upon his part. He was still of tender years, and, considering all of the circumstances in the case—the fact that there was testimony to show that the scum which gathered on the opening had the appearance of dark ice; that he did not skate into the opening, but broke through the ice before reaching it—we are of the opinion that this question should have also been submitted to the jury.

The judgment must be reversed, and a new trial granted, with costs to the appellant.

STONE, OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.