W. R. HIGGINS, Appellant, v. BOARD OF SUPERVISORS OF DICKINSON COUNTY et al., Appellees.

**DRAINS:** Purchase of State Lake Bed under Order for Drainage—
1 **Damages.** One who purchases of the state the *bed* of a me-andered lake, with necessarily imputed knowledge that the sale was being made under a legally authorized finding, by the executive council, that the lake was detrimental to the public health and welfare, and *should be drained,* may not, upon the establishment of a drainage improvement, claim damages for the drainage of the lake, based solely on the claim that he was an abutting landowner.

**EMINENT DOMAIN:** Acts Not Constituting a "Taking." Princi-
2 ple recognized that an act done in the proper exercise of govern-mental powers, and not directly encroaching upon private prop-erty, though impairing its use, is not a "taking" of property in a constitutional sense.

*Appeal from Dickinson District Court.*—D. F. COYLE, Judge.

FEBRUARY 17, 1920.

APPEAL from the action of the district court on appeal from the action of the board of supervisors in denying plaintiff damages on account of the establishment of a drainage district by which is contemplated the removal of waters from a lake abutting on his property. Opinion states the facts. Decree denying plaintiff damages was entered in the district court. Plaintiff appeals.—*Affirmed.*

*Heald & Cook,* for appellant.

*Francis & Owen,* for appellees.

GAYNOR, J.—Proceeding under Chapter 186 of the Acts of the Thirtieth General Assembly, a petition or statement was filed with the executive council of the state of Iowa, alleging that Pratt Lake, a meandered body of water, situated in Dickinson County, Iowa, as it now exists, is detrimental to the public health and the general welfare of the citizens of the county; that it is unwise to maintain such lake or lake bed as a permanent body of water; and that the interest of the state will be subserved by draining it and improving its bed.

1. DRAINS: purchase of state lake bed under order for drainage: damages.

The governor thereupon appointed an engineer, to examine the situation or condition of the lake or lake bed, to make a survey and plat thereof, and to ascertain whether its location is such that it can be drained and improved. The engineer was instructed to make a full report to the council of the area, depth of water in the lake, and its general physical condition, accompanying his report with his plat, field notes, and profile of his survey. This was done, and, upon the report of the engineer, the executive council determined that said lake bed should not be maintained or preserved as the property of the state; that it should be drained, improved, and the land included within the meandered lines thereof sold. Upon the question of preserving and maintaining the lake, and on the question as to whether it should be drained, improved, and sold, evidence was taken and submitted to the executive council. It was upon the evidence so submitted that the council determined that it should be drained, improved, and the bed of the lake sold. The council must have determined that it was to the interest of the state and the general public that the lake bed should be drained and sold. Upon such determination, it sold the lake bed before the same was drained. The lake bed was platted and sold, and the rights of the state in and to the same conveyed by deeds. All the land so conveyed

was within the meander lines of the lake bed. The action of the executive council was taken with a view to and for the purpose, undoubtedly, of making effectual the purposes authorized by the act, and plaintiff is charged with notice of this purpose. It was under this act that the lots were sold, and title passed to the plaintiff.

Though these matters are not set out in the petition, we are told in the petition, to which demurrer was filed, that the land was platted and sold by the state of Iowa under the *authority of said chapter*. We must assume that all was regularly done by the executive council before sale was made of the lots in the bed of the lake, and we must assume that the investigation preceding the sale, and all that was done under the chapter up to the time of the sale, was done in accordance with and in fulfilment of the spirit and purpose of the act under which the council proceeded.

We herewith submit a plat of Pratt Lake, and of the territory surrounding it.

This plat shows the land owned by the plaintiff, and shows that only a portion of the land owned by plaintiff bordered on the lake as it originally existed. This land

is found in the northeast quarter of Section 32. The lots purchased by the plaintiff, as shown by the plat, are in the bed of the lake. We take it from the allegations of the petition that the plaintiff owned all the other land, shown upon the plat to be his, at the time he purchased these lots in the lake. He purchased and now owns Lots C, D, E, F, and G, in the lake bed. Lot C contains 9.91 acres; Lot D, 5.41 acres; Lot E, 3.56 acres; Lot F, 19.35 acres; Lot G, 17.49 acres. After plaintiff purchased these lots, a drainage district was formed, known as Drainage District No. 19, with an outlet at the west end of the lake. The purpose of the drainage district, among other things, was to drain the water from this lake. After the district had been organized for the purpose aforesaid, the plaintiff filed a claim for damages with the board of supervisors, alleging that he owned the land on the east end of the lake, abutting on the lake, and the lots in the lake bed; that he used the abutting land for stock farming; that the water was accessible for stock, and was of great value to his land; that he had built a lodge for hunting and fishing on the border of the lake, which he used during the hunting and fishing seasons; that the lake is stocked with fish, and that ducks and geese come there in the fall; that he has sown a portion of the lake with wild rice, that it may be attractive as a hunting and fishing place. The board of supervisors refused his claim for damages; he appealed to the district court; the district court denied his claim; and he appeals here.

The question presented is whether or not, under the facts as they appear in this case, plaintiff is entitled to be allowed anything as damages on account of the draining of the lake.

The right of the legislature to confer upon the executive council power to drain meandered lakes within the state, is not questioned in this case. Indeed, the whole argument assumes the right in the legislature to authorize

the executive council to take the action which it did.   So we give no consideration to any question that might arise upon the suggestion that the power was not within the state to drain these meandered lakes.   We turn, therefore, to the act of the general assembly under which the executive council acted, in doing the things herein shown to have been done by it.

Section 1 authorized and empowered the executive council of the state to survey the meandered lakes and lake beds within the state, and sell the same, as hereinafter provided, and to determine what lakes shall be maintained as the property of the state, and what meandered lake beds. belonging to the state, may be drained, improved, demised, or sold.

Section 2 provides that, upon the presentation of a statement signed by not less than 50 freeholders (having the qualifications provided for in the act), stating that any meandered lake or lake bed in such county is detrimental to the public health or the general welfare of the citizens of the county, and that it is unwise to maintain such meandered lake or lake bed as a permanent body of water, and that the interest of the state will be subserved by draining and improving such lake bed, the governor shall, within a specified time thereafter, appoint a competent engineer, who shall examine the situation or condition of the lake or lake bed, make a survey and plat thereof, and ascertain whether its location is such that it can be drained or improved, and make a full report to said council of the area, depth of water in the lake, and its general physical condition, accompanying his report with his plat, field notes, and profile of his survey.

Section 3 provides that, upon receipt of the report of the engineer, the executive council shall determine whether such lake or lake bed shall be maintained or preserved as the property of the state, or whether the same shall be drained and improved, and the land included within the

meander lines thereof sold, and may take evidence upon the question, to the end that the question may be properly determined.

Section 4 provides that if, upon such hearing, the executive council determines that the lake or lake bed ought not to be drained, demised, or sold, the same shall be kept and maintained as the property of the state, for the benefit of the general public. But if the council determines that it is to the interest of the state and the general public that the lake or lake bed, concerning which the statement is presented, be drained, improved, demised, or sold, it may permit the same to be drained, under the provisions of the drainage law of the state.

Section 5 provides that, in the event the executive council determines that the lake or lake bed should be drained, improved, demised, or sold, it shall have the right, either before or after such lake or lake bed is drained, to sell and convey, by deed or patent, the land lying within the meander lines of such lake or lake bed; and authority is given to the executive council to make such sale or sales in behalf of the state.

Section 6 provides that, after the lake or lake bed has been surveyed, and the land within the meander lines subdivided, and a plat filed with the secretary of state, the county auditor of the county in which the lake or lake bed is situated shall have the same appraised by a commission (designating the parties eligible to act upon the commission).

Section 7 provides that, after the appraisement has been so made, received, and filed, the executive council shall offer the *land* composing such *lake bed,* and included in such survey and appraisement, for sale, and shall give to the abutting property owners the first right to purchase.

Under this statute, the plaintiff's lots were sold by the executive council. We take it, therefore, that, before this

sale was made, a petition was filed with the executive council, substantially as required by Section 2 of the act, stating that the continuation of the lake was detrimental to the public health and the general welfare of the citizens of that county; that it was unwise to maintain such meandered lake or lake bed as a permanent body of water; that the interests of the state are best served by draining and improving it; that, upon this, under the authority given in Section 1, action was taken by the executive council, and we must assume that the action was bottomed on the statement or petition which called for its action. It was thus before the executive council to determine, after the report of the engineer, whether such lake or lake bed is detrimental to the public health, and whether the best interests of the state will be subserved by maintaining or preserving it, or whether it is of such character that its further preservation as a body of water is inimical to the public welfare, and especially to the citizens of the county. When it is determined that the best interests of the public and of the people of the county will be served by drainage, the council then may sell the lots in the bed of the lake, without first draining the lake. The executive council, under this statute, could not act, until they determined, first, whether a continuation of the lake was inimical to the best interests of the public; for Section 4 says that if, upon such hearing. the council determines that a lake or lake bed ought not to be drained, demised, or sold, the same shall be kept and maintained as the property of the state, for the benefit of the general public. But if the council determines that it is to the interest of the state and the general public that the lake or lake bed, concerning which the statement has been presented, should be drained, it may permit the same to be drained under the provisions of the drainage act. The lots may be sold before any action is taken towards actual drainage. The very purpose of action on the part of council

is to conserve the public health by removing a body of wa-
ter from the surface of the ground, detrimental to the public
health, or to the general welfare of the citizens of the coun-
ty; and this rests on a finding that it is unwise to main-
tain such lake as a permanent body of water.  When one
buys land under a lake so condemned by the executive coun-
cil under the authority of the statute, he knows that the
waters above the land purchased are inimical to the best
interests of the public, and that the state, through its prop-
erly authorized officers, has determined, while it was yet,
as we must assume under this record, the owner of the land,
that the same should be drained, in the interest of the pub-
lic good.  He buys it, therefore, with knowledge of the fact
that the executive council has taken action to have the lake
drained, and the price paid for the land is undoubtedly
measured by this fact.  Before plaintiff acquired any inter-
est in the bed of the lake, the executive council, acting for
the state, had determined that the draining of the waters
from the lake would serve the interests of the public gen-
erally, and especially of the citizens of the county.  Before
plaintiff acquired any interest in the bed of the lake, while
it was yet, as we must assume, the property of the state, the
state consented to such drainage, and the plaintiff is charged
with knowledge of this fact.  So, under no circumstances
could plaintiff claim any damage, if any, resulting to him
as the owner of lots in the bed of the lake, by reason of the
removal of the waters from the bed of the lake.  His only
basis for any claim for damages must rest on the thought
that he owned land abutting upon the lake before and at the
time this action was taken by the executive council, looking
to the drainage.  So the question presents itself: Assuming
that the state had a right to drain the waters of the lake,
did the plaintiff have such a vested interest in its waters
that they could not be drained without compensating him
for the incidental damages that might arise to him by rea-

son of such drainage?

At the time the action of the council was taken, the lake, within its meandered lines, it was assumed by botn parties, belonged to the state. The state consented to its drainage. Plaintiff had no vested interest in or private right to the waters of the lake. See *Board of Park Commissioners v. Diamond Ice Co.*, 130 Iowa 603. When the executive council found the fact to be that

2. EMINENT DO-
MAIN: acts not
constituting a
"taking."

a continuation of the waters in the lake would be inimical to the best interests of the public, especially of the people of the county, it found a fact which, under the act, justified the draining of the lake. Thereafter, the waters of the lake, to all intents and purposes, became as surface water—a public enemy, to be dealt with as such. This lake was a mile long, and somewhat over a quarter of a mile wide, and shallow. The finding of the executive council that the continuation of the lake, as such, was inimical to the best interests of the public, is not questioned. That the lots in the bed of the lake were sold subject to drainage, is made manifest by this record. That the plaintiff bought the lots with knowledge of the fact that the lake was to be drained, must be assumed, because he is charged with knowledge of what was done by the executive council, and of the proceedings that led up to and justified its final action, and of its final action. It will be noted that no part of the purposed ditch touches plaintiff's land. It is not the purpose to construct any ditch into or upon plaintiff's land. No part of plaintiff's land will be taken for the construction of the ditch. The only purpose of the drainage is to remove the water within the meandered lines of the lake. If plaintiff desired to retain any part of the waters of the lake upon the lots purchased by him from the state, he must build his own retaining walls. He cannot use the land of others as retaining walls for the water which he desires to keep. As

said in *Talcott Bros. v. City of Des Moines*, 134 Iowa 113:

"Acts done in the proper exercise of governmental pow-
ers, and not directly encroaching upon private property,
though their consequences may impair its use, are univer-
sally held not to be a taking, within the meaning of the con-
stitutional provision. * * * It is the very essence of
government, and fundamentally so, that private rights shall
at all times be held subordinate to the public good. And
to this every citizen is held, as by, imperative decree, to have
given his consent."

There is no doubt that, when plaintiff bought these
lots in the lake bed, it was with the thought that the waters
above the lots belonged to the state, and would be drained
away. The lots themselves would be of no value to the
plaintiff unless the water was removed therefrom. In the
purchase of the lots, he is held to have consented to the
scheme inaugurated by the executive council for the drain-
age of the waters off these lots, and he cannot be heard to
complain that the purpose inaugurated by the executive
council, under the authority of the statute, which he as-
sented to in the purchase of these lots, has been carried
out, nor can he base any claim for damages resting upon
that ground. The sale of these lots by the state and the
purchase by the plaintiff was in contemplation of the very
thing he now objects to, and upon the-doing of which he
predicates his right to damages. The state sold the lake
bed, not as a lake bed, but as land, and plaintiff bought it
as land, properly platted and laid out, and not as a lake
bed. The land, as such, became valuable only upon drain-
age, and could only be drained by opening channels from
the lake through which, by the action of gravity, the water
would be removed. The act itself provides that the lake
bed—not the lake—may be sold before drainage. Drain-
age is the principal thing. The sale of the land was made
in contemplation of drainage. By the act of purchase, the

plaintiff consented to the drainage. The drainage was for the public good. We think that much that was said by this court in dealing with the facts in *Talcott v. City,* supra, is apropos to the consideration of the questions here involved.

Upon this record, we find that plaintiff had no vested interests in the waters of the lake, entitling him to have the lake maintained *in statu quo* for his benefit, based simply on the ground that he owned lands abutting upon the lake. We find that, in purchasing these lots in the lake, after they had been platted, and after the continuation of the lake had been condemned by the executive council, as inimical to the best interests of the public, plaintiff consented that the waters be drained from the land purchased, the effect of which was to remove the water from his property abutting upon the lake.

Upon the whole record, we think the court was right in denying plaintiff any claim for damages, and its action is— *Affirmed.*

WEAVER, C. J., LADD and STEVENS, JJ., concur.