THE MANISTEE RIVER IMPROVEMENT CO. v. LOUIS SANDS.

*Ordinance of '87—Navigable waters—Tolls for improvements.*

53    593
s19NW 199
a123US288
a31Led 149
a88O   113

1. The Ordinance of 1787 in declaring the navigable waters of the Northwest Territory forever free meant to secure the same rights to nonresidents as to residents.

2. Tolls for the actual use of passage over land or water ways cannot be treated as taxes or invasions of private property; they are a fixed compensation, in lieu of a quantum valet, for the use of that which has value and is used to advantage.

3. Streams that lie within the State of Michigan and cannot be used for floatage without improvement cannot be improved by the State itself (Const. art. xiv. § 9), but the Legislature may authorize the formation of corporations to improve them and to levy toll upon those who make use of the improvements.

Error to Manistee. (Judkins, J.) April 25.—April 30.

ASSUMPSIT. Defendant brings error. Affirmed.

*Smiley & Earle* and *H. H. Wheeler* for appellant.

53 MICH.—38

*Hanchett & Stark* and *Ramsdell & Benedict* for appellee. States have the power to improve streams within their boundaries: *Wisconsin River Imp. Co. v. Manson* 43 Wis. 265; *Moor v. Veazie* 31 Me. 360; 14 How. 568; *Gilman v. Philadelphia* 3 Wal. 713; *Pound v. Turck* 95 U. S. 459; *Huse v. Glover* 15 Fed. Rep. 292; *Duluth Lumber Co. v. St. Louis Boom & Imp. Co.* 17 Fed. Rep. 419; *Escanaba Company v. Chicago* 107 U. S. 678; *County of Mobile v. Kimball* 102 U. S. 699; *Spooner v. McConnell* 1 McL. 353; *Palmer v. Cuyahoga County* 3 McL. 226; *Kellogg v. Union Company* 12 Conn. 7; *Thames Bank v. Lovell* 18 Conn. 500; *Commissioners of Sinking Fund v. Green and Barren River Nav. Co.* (Ky.) 11 Rep. 394; *McReynolds v. Smallhouse* 8 Bush 447; *Carondelet Canal and Navigation Co. v. Parker* 29 La. Ann. 430; 29 Am. Rep. 339; states have power to authorize municipal corporations to construct wharves upon the navigable streams, impose tolls or charges upon vessels using such wharves, determine the rate of toll, fix the rate upon the tonnage of the vessels and collect them of the parties using the wharves: *Packet Co. v. Keokuk* 95 U. S. 80; *Packet Co. v. St. Louis* 100 U. S. 423; *Vicksburg v. Tobin* id. 430; *Packet Co. v. Catlettsburg* 105 U. S. 559; *Transportation Co. v. Parkersburg* 107 U. S. 691.

CAMPBELL, J. These cases all come up on the same question,—whether the statute allowing the State Board of Control to regulate, and the plaintiff to collect, tolls for floating logs through such portions of the Manistee river as plaintiff has cleared and improved so as to facilitate floatage, is valid. There is a further question as to tolls previous to February, 1879. The defendant's brief gives no very tangible reason why these differ from the rest. We see nothing to authorize any inquiry behind the tolls claimed that has not been practically disposed of by our previous decisions.

The validity of this legislation has been twice sustained by this Court, first in the quo warranto brought by the State on the relation of *Benjamin v. Manistee River Improvement Co.* 42 Mich. 628, and afterwards in *Manistee River Improvement Co. v. Lamport* 49 Mich. 442. The decisions in those cases covered all the ground that seems to be covered by this case, but counsel have nevertheless seen fit to raise the same issues, as we suppose for the purpose of review

elsewhere, and therefore we are called upon to decide the controversy again, although it will not be necessary to repeat what has in our judgment been already sufficiently discussed. We shall content ourselves with a very brief reference to what has been more fully referred to in those cases.

.The two points on which defendant relies are: *first*, that levying these tolls is depriving defendant of his property without due process of law; and *second*, that the power given over this stream violates the compact in the Ordinance of 1787, which makes the Lakes and their affluents and connecting land portages free to all citizens of the various states, as common highways, without taxes, imposts or duties.

As our own State Constitution is quite as emphatic as the Ordinance or United States Constitution, on these heads, there is no occasion for doing more than making such an explanation as will show the substantial identity of the cases.

The statute in question was passed chiefly for the purpose of enabling streams which were insufficient for lumber floatage by reason of natural difficulties or such other obstructions as had arisen, to be cleared and made available for getting logs to the mills on the lower parts of the same waters or the rivers into which they empty. The statute requires the Board of Control from year to year to adjust the tolls by reference to the supposed amount of business likely to be done. The object of all this is to prevent any extortionate charges and to make the tolls come as near a fair price for the use of the improvements as is feasible, a maximum rate being fixed beyond which they cannot be charged at all. No tolls are allowed to be charged except for such parts of the river as are improved, and by such floatables as derive benefit from it. Logs are not tolled for improvements which are not needed for log floatage. And these improvements may include dams to raise the stream and supplying feeders by connecting other waters.

It is difficult to give much force to the argument that deals with log-floatage in a stream that needs improvement to float logs at all, and which is entirely localized within the State,

as having much resemblance to navigation in its usual sense. But giving it all the force that is claimed for it, there can be no doubt that the object of the Ordinance of 1787 was chiefly, if not entirely, to secure the same rights to non-residents as should be granted to residents, and to prevent any discriminating burdens. The Constitution of the United States has secured this equality of rights among citizens of different states, and the Constitution of Michigan has secured the common right of passage in all navigable waters. The controversy, therefore, is narrowed down to the inquiry whether the State has a right to provide for improving waters that need improvement, and for allowing tolls to be charged for using the improvements.

The idea that tolls for the actual use of passage over land or water highways can be treated as taxes, and as invasions of private property, does not appear to us tenable. They are not levied on property, or on persons, as their share of any public burden laid on the people, but they are a fixed compensation in lieu of a quantum valet for the use of that which has value and which is actually used to advantage. And the statute contemplates that in all probability, without the facilities rendered by the improvement, much of the property floated would not get down the stream at all. They are collected on the same principle as turnpike tolls, or railway and wharfage charges, which no one has ever supposed were public taxes or taxes at all. Turnpikes and canals are usually open to the use of everybody, on uniform terms, but they are seldom open to use without tolls. In the grants made to this State of lands to build canals and improve streams tolls have been expressly provided for and authorized by Congress. 10 Stat. at L. 35; 13 Stat. at L. 519; *Attorney Gen. v. Lake Superior Ship Canal Co.* 32 Mich. 233. In both the statutes referred to the waters improved by the St. Mary's river canal and Portage canal were within the same Ordinance of 1787, and were parts of our great public waters, and not log-ways. But Congress recognized the propriety of having the cost and current expenses of such improvements paid out of tolls. Under the Constitution of

this State there is no way of providing for such cases without the intervention of corporations and tolls, because the State is forbidden to make any public works at its own expense by the express terms of the Constitution.

Reference was made in our former decisions, and need not be repeated, to the recognized power of states to improve their domestic waters where not in conflict with the policy of the general government. It would be a singular state of things if nobody but Congress could improve these local waters, over which, in their natural state, the ordinary vehicles of commerce have little or no occasion or power to pass. And we do not think there is anything, either in the action of Congress, or in the views thus far expressed by the United States judiciary, which in any way opposes the improvement of this river, or the right to demand tolls, and sue for them when not paid by the parties using the improvements.

The judgments must be affirmed with costs.

The other Justices concurred.