PEOPLE'S ICE COMPANY *vs.* CHARLES E. DAVENPORT.

Norfolk.    March 25, 1889. — May 14, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, & HOLMES, JJ.

*Great Pond — Ice — Title — Conversion.*

The owner of an icehouse upon the shore of a great pond, who scrapes the snow from about half the ice therein, marking it off with stakes, and then suspends operations upon it, acquires no title to the ice scraped such as will enable him to maintain an action against the owner of another icehouse on the pond, who five days later begins to cut and gather such ice, for its conversion.

TORT for the conversion of and damage to certain ice. Trial in the Superior Court, before *Aldrich,* J., who reported the case for the determination of this court, in substance as follows.

The plaintiff and the defendant were proprietors of icehouses on Sprague Pond, a great pond in Dedham and Hyde Park, and had an equal and common right, or right in common, to take ice from any and all parts of the pond.

Otis H. Weed, called by the plaintiff, testified as follows: "I am the president of the People's Ice Company. Icehouses of that company are at the north end of Sprague Pond, and the defendant owns icehouses at the south end of that pond; all the icehouses are near the railroad. Our houses are in Hyde Park, and Mr. Davenport's are in Dedham. I was at the pond at the time the Davenports were scraping the first snow off from the ice. They had then scraped full half-way of the pond. This was in January, 1888. Afterwards, in the same month, we scraped the snow off of the pond at the northerly end thereof, up to the line where they had scraped previously. This line ran right across the pond from the railroad, at a right angle with the railroad. After a few days, I was at the pond in the morning, and found their teams at work marking and grooving about an acre of ice that we had previously scraped. This was at the westerly side of the pond. They cut eight hundred tons of this ice, and from the manner in which they cut it, affected other ice which we had scraped, so that we were prevented from cutting two hundred tons more. Mr. Davenport told me, at the time they first scraped the ice that winter, that he should not want any ice beyond the line of that scraping. I was at the pond the morning of the day they commenced to cut the ice on our side of the line, and told them that they were trespassing on our property. The only thing that we did to this ice was to remove the snow from its surface, and to put down stakes so as to show where the line of scraping was. I had been at the pond nearly every day between the time we scraped the ice and the time they cut it. The day previous to the day they cut it, I went across the pond on the side near the railroad, but not on the side where this ice was cut by defendant. It was five days between the time we cleared the ice and the time when Mr. Davenport cut it."

There was no other evidence that the plaintiff had taken or retained possession of the ice in question.

Upon this evidence, the judge ruled that the plaintiff could not maintain the action, and directed a verdict for the defendant, and reported the case for the determination of this court. If the ruling was right, judgment was to be entered upon the verdict; otherwise, the case was to stand for trial.

*A. B. Wentworth*, for the plaintiff, cited Gould on Waters, § 191; *Woodman* v. *Pitman*, 79 Maine, 456; *People's Ice Co.* v. *The Excelsior*, 44 Mich. 229; *Hickey* v. *Hazard*, 3 Mo. App. 480; *Wood* v. *Fowler*, 26 Kan. 682.

*J. E. Cotter & C. F. Jenney*, (*E. Davis* with them,) for the defendant.

MORTON, C. J.   The plaintiff never was in the possession of the ice for the value of which this suit is brought, after it was cut and severed from the real estate.   It scraped off the snow from an area which covered about half of the pond, and put down stakes to show where the line of scraping was.   It then suspended operations for at least five days before the defendant began to cut ice.   The question is whether this gave the plaintiff any title to the ice which it had thus scraped.   We think it did not.   It is too well settled to be disputed that the property in the great ponds is in the Commonwealth; that the public have the right to use them for fishing, fowling, boating, skating, cutting ice for use or sale, and other lawful purposes; and that the owners of the shores have no exclusive rights in them except by a grant of the Legislature.   *Hittinger* v. *Eames*, 121 Mass. 539.   *Gage* v. *Steinkrauss*, 131 Mass. 222.

The right to cut ice is common to all the public.   The plaintiff has this right in common with the rest of the public, but it cannot by its own act appropriate a part of the pond by scraping it, or setting up stakes, and exclude the public from it. The ice until it is cut remains a part of the realty, and no one has any exclusive title in it.   There is no statute or other law which enables an owner of the shore, or any other person, thus to exclude the public.

In *Hittinger* v. *Eames*, *ubi supra*, it appeared that the owners of the shore of Fresh Pond had, by an indenture, undertaken to divide the pond among themselves, and were accustomed at the beginning of the winter to scrape and mark off by stakes their respective shares of the pond; but the court held that they could not thus exclude the public from taking ice.

The case of *Rowell* v. *Doyle*, 131 Mass. 474, is similar to the case at bar.   There the plaintiffs had cleared off the snow, and were proceeding to make ready for harvesting the ice. . The defendant cut several holes through the cleared ice for the pur-

pose of fishing, and the plaintiffs sued him in an action of tort. The court held that the action could not be maintained, saying in the opinion, that the plaintiffs " had the same right as others to cut and take ice which was the natural product of the pond; but they had no right, to the exclusion of other public uses, to the occupation of any part of the pond for the purpose by artificial means of increasing the thickness of the ice. At the time of the acts of which they complain, they had not cut any ice, nor were they engaged in cutting, or otherwise in the actual possession of any; but they had suspended their operations for at least a day and two nights." If the plaintiffs had acquired any title to the ice which they had scraped, the decision must have been otherwise.

Upon the facts of the case at bar, we are of opinion that the plaintiffs had no title to or possession of the ice cut by the defendant which enables them to maintain an action of tort in the nature of trover.

The case is not like one of capturing animals *feræ naturæ,* or of taking possession of derelict property. It is more analogous to the case of a tenant in common attempting to take possession of a part of the common estate, by staking it off and thus excluding his cotenants.     *Judgment on the verdict.*