PEARL L. WITKE, appellee, v. STATE CONSERVATION·COMMISSION et al., appellants.

No. 48238.

(Reported in 56 N.W.2d 582)

January 13, 1953.

Robert L. Larson, Attorney General, and Kent Emery, Assistant Attorney General, for appellants.

Boyle & Schuler, of Clear Lake, for appellee.

Thompson, J.—The Fifty-fourth General Assembly by section 3 of chapter 69 of its Acts amended section 111.4 of the Code of 1950 by adding thereto a new paragraph. Section 111.4, as it now stands after being so amended is herewith set out, the new paragraph appearing in italics which we supply:

"No person, association or corporation shall build or erect any pier, wharf, sluice, piling, wall, fence, obstruction, building or erection of any kind upon or over any state-owned land or water under the jurisdiction of the commission, without first obtaining from such commission a written permit. No such permit shall be issued without approval of the Iowa natural resources council. The commission shall charge a fee of not less than ten dollars nor more than twenty-five dollars per year in the discretion of the commission for each such permit issued for any pier, wharf, sluice, piling, wall, fence, obstruction, building or erection of any kind, used for commercial purposes.

"It shall be the duty of the commission to adopt and enforce rules and regulations governing and regulating the building or erection of any such pier, wharf, sluice, piling, wall, fence, obstruction, building or erection of any kind, and said commission may prohibit, restrict or order the removal thereof, when in the

judgment of said commission it will be for the best interest of the public.

"Any person, firm, association, or corporation violating any of the provisions of this section or any rule or regulation adopted by the commission under the authority of this section shall be guilty of a misdemeanor, and upon conviction shall be punished by a fine of not to exceed one hundred dollars or by imprisonment in the county jail not to exceed thirty days.

*"No person, association or corporation shall operate any commercial concession on any state owned lands or waters without first obtaining from the conservation commission a permit therefor. The commission may issue such permits and charge appropriate fees therefor within its discretion and may cancel said permits for cause and make refunds of any equitable portion of the amount paid."*

Following the enactment of this amendment the Conservation Commission, which will hereinafter be referred to as the defendant, proceeded to adopt rules and regulations providing that the operators of concessions upon state-owned lands or waters should obtain concession permits, and should pay therefor certain fees, based upon a schedule of two and one-half per cent upon the first $5000 of their annual gross receipts; five per cent upon the next $5000; and seven and one-half per cent of all annual gross receipts in excess of $10,000. The plaintiff, who owns and operates a fleet of several boats on Clear Lake in Cerro Gordo County was notified she must apply for a concession permit in accordance with the above regulations. She refused to so apply and brought this action. Therein she alleged: (1) That section 111.4, as amended, has no application to her business since she is not operating any concession on state-owned lands or waters; (2) that she is operating her boats as a littoral owner upon a navigable lake, under her common-law rights; (3) that the statute is unconstitutional as a deprivation of plaintiff of her property without due process of law, a taking of private property for public use without just compensation being first made, and a denial to plaintiff of the equal protection of the law; (4) that the statute imposes a tax in violation of section 7 of Article VII (Constitution of Iowa) which provides that every law imposing

a tax shall distinctly state the tax and the object to which it is to be applied; (5) that the statute constitutes an improper delegation of legislative authority to the defendant; and (6) that the amount of the tax or fee sought to be imposed is exorbitant and unreasonable.

No question as to the appropriateness of the remedy adopted by plaintiff to determine her rights was raised. Upon trial the district court held the proposed concession permit fee was a tax; that the taxing power may not be delegated to any person or body not immediately elected by and responsible to the people, and that the statute in question is void because it attempts so to do; and further, that since the state holds title to navigable waters within its boundaries in trust for the public it does not have such a proprietary interest as that it may do more than prescribe proper police regulations, and it may not deny the right of every member of the public to enjoy the use of such waters so long as such use does not interfere with the right of others to like enjoyment. The trial court did not pass upon the other questions raised by plaintiff, but entered its decree for her upon the points set out. It is from this decree that we have the present appeal.

There is no substantial dispute in the facts. That Clear Lake is a navigable body of water, lying wholly within the boundaries of the State of Iowa; that the plaintiff operates a commercial business on the lake, and upon its shores, where she has littoral rights as the owner of land extending to high-water mark; that she has several boats which she uses in navigating the waters of the lake in transporting passengers about the lake in taxi service and in conducting excursions for hire; that she does not use or solicit business from state-owned docks in any way, but operates from privately owned docks; and that she has regularly paid all license fees required by chapter 106 of the 1950 Code, and by the first paragraph of section 111.4, supra, are all conceded by all parties.

Likewise the commission concedes it is not claiming the right to assess plaintiff, and others similarly situated, the charges above referred to under any exercise of the police power of the state. The defendant's position, as stated by its counsel with commendable frankness, is that it has the right as owner of the waters of

the lake to charge for their use; or if it be held there is a distinction between the terms "owner" and "trustee for the public" a trustee under such circumstances has the right to make a charge in the nature of rent or other compensation for the use of the trust property by one of the beneficiaries. It is urged that no one beneficiary has the right to make a profit from the property held in trust by the state for all members of the public without paying compensation therefor to the state as the representative of and trustee for his co-beneficiaries. The commission concedes that, as the representative of the state, if it does not have such right either as owner or as trustee it cannot prevail in this litigation.

I. We agree with the defendant that the charge proposed to be levied against the plaintiff is not a tax. It was held in Manistee River Imp. Co. v. Sands, 53 Mich. 593, 19 N.W. 199, that such charges are not levied upon or against property, but are in lieu of a *quantum valebat*, for the use of that which has value and which is used for gain. Perhaps the charge comes within the definition of a tax, "a burden or charge imposed by the legislature upon persons or property to raise money for public purposes, or to accomplish some governmental end," as cited by the trial court from Hanson v. Vernon, 27 Iowa 28, 47, 1 Am. Rep. 215, but we think it includes too much. There are many charges made by governmental bodies which are not taxes, and the one sought to be imposed here comes within that class.

II. We agree with the commission that there is substantially but one question, or at least one major question, in this case. If the state is the owner of the waters of the lake and of the land underlying them, or if its position as trustee of such waters and lands for the public gives it the rights of an owner, may it charge for their use? Without doubt, the state when owning property in fee which it has built or improved, as the state fairground, the state parks, or state constructed artificial lakes may, at least within reason and perhaps without discrimination, sell concession rights, lease buildings, and otherwise exercise the rights of ownership; and it may deny use of its property to those who refuse to pay such proper charges; at least for the purposes of this case the appellee so concedes. The narrow but important question for determination here is whether the rights of the state, represented by the commission, are the same when it does not

have a proprietary ownership, but holds the lake bed and navigable waters above it as a trustee for all of the people. If it has such rights it must prevail, but if it does not the statute under attack must fail as a taking of plaintiff's property without due process of law. We are cognizant of the rule that we should not strike down a legislative enactment unless it clearly appears to be invalid under the provisions of the Constitution of the United States or of the State of Iowa, or both, and we proceed with that principle in mind. Loftus v. Department of Agriculture, 211 Iowa 566, 570, 232 N.W. 412.

In Board of Park Commissioners v. Diamond Ice Co., 130 Iowa 603, 607, 105 N.W. 203, 205, 3 L. R. A., N. S., 1103, 8 Ann. Cas. 28, we said:

"It may readily be conceded that the state may not deny the right to take ice from a public stream any more than it may interfere with the common right to take water therefrom, or of fishing therein, and yet all of the authorities hold that such rights are the subject of reasonable regulations."

Since it is conceded here that there is not involved the question of the right to regulate under the police power of the state, that part of the last quoted sentence following the comma has no significance. The final holding of the case was that while the ice company had a right to take ice for commercial purposes, it could not do so if it interfered with the use of the stream by others, and so was subject to reasonable regulation.

In Brown v. Cunningham, 82 Iowa 512, 516, 48 N.W. 1042, 12 L. R. A. 583, is found language bearing upon the point under examination. The entire page 516 contains a significant discussion, but in the interest of brevity we quote only the concluding statement: "Whoever has lawful access to the stream flowing over a bed owned by the government, and held in trust for the benefit of the people, may use the water as regulated by law."

The holding of the case is that the plaintiff, although not a riparian owner, had a right to take ice from the Wapsipinicon River, a nonnavigable stream to which the United States Government retained ownership in trust for the public. It is true that no state statute was involved, but under the rule laid down no

such statute could have taken from the plaintiff his right to use the stream without compensation.

In McCauley v. Salmon, 234 Iowa 1020, 1022, 14 N.W.2d 715, 716, Justice Oliver, for the court, said:

"The parties agree that the Des Moines River at this place is a navigable stream. Hence, riparian owners own only to ordinary high-water mark and the whole bed of the river belongs to the state in trust for the public. * * * The right of the public to navigate the water is paramount. * * * This includes the right of fishing, boating, skating, and other sports." (Citing Board of Park Commissioners v. Diamond Ice Co., supra.)

The general rule is thus expressed in 56 Am. Jur., Waters, section 215, page 676:

"It is a general rule that the state cannot add to its revenues by selling to individuals the right to enjoy such use of public waters as rightfully belong to the public at large, such as boating, floating logs, bathing, fishing, fowling, cutting ice, and the like. It is generally agreed, however, that * * * a state may impose charges or exact tolls for the use of *an improved waterway or of special facilities for navigation* * * *." (Italics ours.)

In the case at bar there is no claim or showing the state has done anything to improve the waters of Clear Lake for navigation or that the plaintiff is using or contemplates using any special facilities.

A question quite similar to the one involved here was before the supreme court of North Carolina in Hutton v. Webb, 126 N. C. 897, 898, 36 S.E. 341, 59 L. R. A. 33. There was involved an act which attempted to authorize municipalities to levy a charge for floating logs down a navigable stream, based upon the number of logs floated. It was held that the tax, if it was a tax, was not for the public good, but for private benefit; but much of the discussion is pertinent here. After making the point that riparian owners have an easement for floating logs, among other rights, the court said:

" 'I concede the right of the State to establish a highway on water or land. * * * I also admit that where the State has made

or caused to be made valuable improvements of a local nature, it may charge a reasonable compensation for the use of the increased facilities and benefits afforded by such improvement. But this is in the nature of a toll and not a tax, and presupposes some corresponding benefit to him who pays the toll. Where there is an utter failure of consideration, why should the toll be paid?' "

Perhaps the authority most relied upon by the plaintiff is Rossmiller v. State, 114 Wis. 169, 89 N.W. 839, 58 L. R. A. 93, 91 Am. St. Rep. 910. The legislature of the state of Wisconsin had enacted a statute providing that whoever took ice from the navigable lakes of the state for shipment outside the state must first obtain a license from the state and must post a bond insuring compliance with the requirement that ten cents per ton would be paid on all ice so shipped. The Wisconsin Supreme Court held that the act was in violation of the Fourteenth Amendment to the Constitution of the United States in that it denied the right of all persons to equal protection of the laws, and was likewise in derogation of the clause of the State Constitution which prohibited the taking of private property for public use without just compensation. The basic reasoning of the case is, of course, that the state holds the title to the lake beds and waters merely as trustee for the public; that all members of the public have an equal right to the use of the waters for navigation, fishing, taking ice therefrom, etc. It is held that the rights of the public to take fish, or game, or ice, or water, or to use the lake for commercial purposes as well as for pleasure or individual use are the same. The right of the state to make reasonable regulations for the purpose of securing the common rights to all, or to exact compensation for improvements actually made which benefit the one to be charged, is recognized. The opinion is too long for extensive quotation but we think its conclusion may well be set out here (page 188 of 114 Wis., page 844 of 89 N.W.):

"Since the whole beneficial use of navigable lakes is unchangeably vested in the people, everyone within the state having the right to enjoy the same so long as he does not invade the like right of another, * * * any law invading that individual possession is, in effect, an invasion of the right to liberty and property without due process of law, contrary to said fourteenth

amendment. *Any such invasion for the purpose of adding to the public revenues, exacting from a person, for the benefit of the state, compensation for the enjoyment of a right which belongs to him and which he has a right to enjoy without paying therefor, violates sec. 13, art. I, of the state constitution, prohibiting the taking of private property for public use without just compensation.*" (Italics ours.)

Other authorities tending strongly to support the same holding are Brastow v. Rockport Ice Co., 77 Maine 100; Woodman v. Pitman, 79 Maine 456, 10 A. 321, 1 Am. St. Rep. 342; Rowell v. Doyle, 131 Mass. 474; People's Ice Co. v. Davenport, 149 Mass. 322, 21 N.E. 385, 14 Am. St. Rep. 425; Meyers v. Lafayette Club, 197 Minn. 241, 266 N.W. 861.

The defendant attempts to distinguish Rossmiller v. State, supra, by the contention that it is based upon the provisions of the fourth Article of the Ordinance of 1787, the Northwest Ordinance, which provides:

"The navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between them, shall be common highways and forever free, as well to the inhabitants of the said territory as to the citizens of the United States and those of any other states that may be admitted into the Confederacy, without any tax, impost or duty therefor."

It is then argued that the Northwest Ordinance was superseded by the Act admitting Iowa into the Union, which provides that it was admitted on an equal footing with all other states. Further, we are cited to authorities, including Dred Scott v. Sandford, 60 U. S. 393, 490, 19 How. 393, 15 L. Ed. 691 (Missouri), and others, which hold that the provisions of the Ordinance of 1787 are no longer in force in the states, such as Iowa, which were affected by the provisions of the Northwest Ordinance. We need not consider this contention at length since a study of the Rossmiller case indicates that the Northwest Ordinance was not of vital importance in the court's decision.

The case of Manistee River Imp. Co. v. Sands, supra, illustrates what we think is the line of demarcation between the power of the state to charge tolls for the use of navigable waters and its

lack of power to make such charges. In the Manistee case the river, previously unfit for lumber floatage, had been improved and cleared so that it was made available for floating logs to mills on the lower river. This, said the Michigan Supreme Court, authorized a proper charge, and emphasis is placed in the opinion on the fact that no tolls were charged except for such parts of the river as were improved, and only against the logs benefited thereby.

The commission relies heavily at this point upon Livingston and Fulton v. Van Ingen, 9 Johns. Rep. 507. In this case the New York Court of Errors upheld the grant of an exclusive right to Robert R. Livingston and Robert Fulton to operate steamboats upon the navigable waters of the state for a period of thirty years. It is not easy to determine the precise reasoning of the court since several of the judges wrote opinions which differ in their approach to the subject, and assign different reasons for the conclusions reached. However, the result unmistakably upheld the right of the state to grant an exclusive franchise in the use of the waters for a certain purpose and for a limited but somewhat extensive period. It clearly appears also that the only constitutional challenge made to the Act of the legislature was that it violated two provisions of the United States Constitution against interference with interstate commerce, and giving the Federal Government exclusive control over patents. In his discussion, and by way of dictum since the point was not raised, Chancellor Kent said:

"In the present case, the grant to appellants took away no vested right. It interfered with no man's property. It left every citizen to enjoy all the rights of navigation, and all the use of the waters of the state which he before enjoyed."

The reasoning of the learned chancellor at this point seems to us more specious than sound. Every citizen was not free to enjoy all the rights of navigation and all the use of the waters of the state which he had before had. It was his right to enjoy the use of the waters for navigation, not only by any means then in existence, but by any means which he or others might afterward devise. But in effect, since the chancellor seems to put his reasoning upon the ground that because steam navigation had not

theretofore been in use the citizen was not deprived of any right he had previously had, his holding does not support the defendant's position in the case at bar. He seems to recognize, by inference at least, the general right of the public to the use of the navigable waters of the state, free from interference by the state except by regulation under the police powers. If, however, we are to take the Livingston case, supra, as authority for the proposition that the state may arbitrarily grant exclusive rights in its navigable waters to whomsoever its legislature, or some administrative body chosen by the legislature, may select, or to the highest bidder, then we can only say that we are not in accord with the holding, but prefer to follow the line of authorities exemplified by Rossmiller v. State, supra, and the other cases of like purport cited above.

We do not find the other authorities cited by the commission in point. Some of them are instances in which there was a proper charge for improvements made; in some the cited language is dictum only; and in some, as Wilson v. Gabler, 11 S. D. 206, 76 N.W. 924, the controversy turned upon the rights of ferries, as to which there has always been recognized a right of exclusive franchise.

In argument, the commission illustrates its point by the example of the farm held in trust for a number of beneficiaries and the use of the land or a part of it by one of them. This, says the commission, is a parallel case to the one at bar, and it would clearly be the duty of the trustee to compel the beneficiary so using the land to pay therefor. The illustration is plausible, but not sound. There is a difference, under the authorities, in the title held by a private trustee and that held by the state as trustee for all its citizens. Likewise, the use of a part of the land by one beneficiary for a gainful purpose would almost certainly interfere with its use by the others.

We think the true rule is that all persons have a right to use the navigable waters of the state so long as they do not interfere with their use by other citizens, subject to regulation by the state under its police powers. Also, a proper and reasonable charge may be made by the state if it has improved the navigability of the waters, or if use is made of facilities provided by the state. But subject to these exceptions, none of which is

made to appear here, the state may not restrict or charge for the use of the waters of navigable streams or lakes, and an attempt on its part to do so.is a deprivation of the citizen of his property without due process of law, and without compensation, and so in violation of sections 9 and 18 of Article I of the Constitution of Iowa.

In view of our holding above it is not necessary that we determine the other matters argued. For the reasons set forth in Division II the judgment and decree of the trial court is affirmed. —Affirmed.

All JUSTICES concur.